1  Anthony T. Case, Esq. (SBN 149583)
2  Tiffany L. Steward, Esq. (SBN 279978)
   FARMER CASE & FEDOR
3  402 West Broadway, Suite 1100
4  San Diego, California  92101
   Tel: (619) 338-0300  |  Fax: (619) 338-0180
5  tcase@farmercase.com
6  tsteward@farmercase.com
7  Attorneys for Defendant,
   CNO Services, LLC
8

9            **UNITED STATES DISTRICT COURT**
10           **CENTRAL DISTRICT OF CALIFORNIA**
             **WESTERN DIVISION**
11

| JOHN NJOROGE | CASE NO. _____ |
| Plaintiff, | [Los Angeles Superior Court Case No. 20STCV03454] |
| v. | |
| CNO SERVICES, LLC, | **DEFENDANT'S NOTICE OF REMOVAL** |
| Defendant. | |

18

19      COMES NOW Defendant, CNO Services, LLC ("CNO"), by counsel,
20  pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, and hereby gives notice of
21  removal of the above-styled matter from the Superior Court of the State of
22  California for the County of Los Angeles-Central District to the United States
23  District Court for the Central District of California, Western Division. In support
24  of removal, CNO states as follows:

25                      **I. INTRODUCTION**

26      1.   On or about January 28, 2020, Plaintiff JOHN NJOROGE
27  ("Plaintiff") filed a Verified Complaint (the "Complaint") against CNO in the
28  Superior Court of the State of California for the County of Los Angeles-Central

District, under Case No. 20STCV03454 (the "State Court Action"). A true copy of all process, pleadings, and orders in the State Court Action are attached hereto as <u>Exhibit 1</u>.

2.    Service of process upon CNO was achieved when the Summons and Complaint were delivered on February 4, 2020. Copies of the service envelope bearing the Certified Mail number and stamped "Received" on February 4, 2002, and the USPS delivery confirmation for same are attached hereto as <u>Exhibit 2</u>.

3.    The Complaint contains allegations of 1) bad faith breach of implied obligation of good faith and fair dealing, and 2) bad faith failure to properly investigate claim against CNO (see Exhibit 1).

4.    In his Complaint, Plaintiff seeks to recover the following from CNO:

(1)    For recover of the value of the Annuity at the time of Mr. Kimondo's death, estimated to be $50,000, plus interest since 2008.

(2)    For punitive damages against Defendant for its bad faith breach of the implied obligation of good faith and fair dealing and failure to investigate Plaintiff's claim.

(3)    For reasonable costs and attorney's fees against Defendant for its bad faith breach of the implied obligation of good faith and fair dealing and failure to investigate Plaintiff's claim.

(4)    For any other compensatory, general, special, and consequential damages against Defendant.

(see Exhibit 1, Complaint, p. 6).

5.    This Court has original jurisdiction based on diversity of citizenship and the amount in controversy under 28 U.S.C. § 1332, and thus, this State Court Action is removable under 28 U.S.C. § 1441(a).

## II.  <u>PROCEDURAL REQUIREMENTS FOR REMOVAL HAVE BEEN MET</u>

### A.  <u>This Case is Properly Removable</u>

6.    The present action is properly removable under 28 U.S.C. §1441,

which provides in pertinent part:

> Except as otherwise expressly provided by the Act of Congress, [1] any civil action brought in a state court of which the district courts of the United States have <u>original jurisdiction</u>, [2] may be removed by the defendant or the defendants, to the <u>District Court of the United States for the district or division embracing the place where such action is pending</u>…

28 U.S.C. §1441(a) (emphasis added).

7.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. §1332, which provides, in pertinent part:

> (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between –
>
>    (1)    citizens of different States . . . .

8.    Additionally, the United States District Court for the Central District of California, Western Division, is the District and Division embracing the location of the State Court where this suit is currently pending.

**B.    The Removal Notice is Timely**

9.    The first date upon which CNO received a copy of the initial pleading was February 4, 2020, when it received the Complaint by certified mail (see Exhibit 2).

10.    Since CNO is removing this action within thirty (30) days from the date it first received a copy of the Complaint, the initial pleading in this action, and no further proceeding as to CNO has been taken herein, CNO's Notice of Removal is timely.

### III.  DIVERSITY JURISDICTION EXISTS

**A.    Citizenship of the Parties**

11.    This is an action between citizens of different states. A natural person is a citizen of the state in which he has his domicile, i.e., a permanent home where

he intends to remain or to which he intends to return. *See, Gilbert v. David*, 235 U.S. 561, 569, 35 S.Ct. 164, 59 L.Ed. 360 (1915); *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

12.   Plaintiff alleges to be a resident of Los Angeles County, California ("Plaintiff John Njoroge is a resident of the County of Los Angeles, State of California.") (see Exhibit 1, Complaint, ¶ 12). Therefore, Plaintiff is presumed to be a citizen of the State of California for the purposes of diversity jurisdiction. "It is presumed that a person's current residence is also his domicile". *Chism v. FCA US, LLC,* 2020 WL 777300 (C.D. Cal. Feb. 18, 2020). "Citizenship and domicile are synonymous for purposes of § 1332." *Nickelsen v. The Bank of New York Mellon,* 2014 WL 12603503, *2 (C.D. Cal. 2014).

13.   For purposes of diversity jurisdiction, the citizenship of a limited liability company is determined by the citizenship of all of its members. *Rodriguez v. REMA Tip Top/North America, Inc.,* 2020 WL 247314, *1 (C.D. Cal. Jan. 16, 2020).

14.   CNO Services, LLC is an Indiana Limited Liability Company with its principal place of business in Carmel, Indiana, and all of its members are citizens of U.S. States other than California. Thus, CNO Services, LLC is a citizen of States other than California. See, Declaration of Karl Kindig attached as Exhibit 3.

**B.   The Amount in Controversy Requirement is Satisfied**

15.   The amount in controversy is determined as of the date of removal. *Scalzo v. Allied Prop. & Cas. Ins. Co.,* 2011 U.S. Dist. LEXIS 75721 *15 (E.D. Cal. July 11, 2011).

16.   Further, the amount in controversy is determined by the amount demanded, not what will ultimately be recovered. *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 289-290 (1938). "[T]he question is not how much [p]laintiff . . . will ultimately recover; the amount in controversy is calculated

1   based upon the amount put into controversy by the complaint." *Olvera v. Quest*
2   *Diagnostics,* 2019 WL 6492246, *3 (C.D. Cal. Dec. 2, 2019).

3        17.   In addressing the amount in controversy, CNO does not concede the
4   validity of Plaintiff's claims or attempt to predict what Plaintiff will recover.
5   While the defendant must "set forth the underlying facts supporting its assertion
6   that the amount in controversy exceeds the statutory minimum," the standard is
7   not so taxing so as to require the defendant to "research, state, and prove the
8   plaintiff's claims for damages." *Meyer v. Fifth Third Bank,* 2019 WL 6320908,
9   *2 (C.D. Cal. Nov. 26, 2019). "[A]ffirmative defenses, counterclaims, and
10  potential offsets may not be considered as part of the amount in controversy."
11  *Olvera, supra*, Slip Op. at *3.

12       18.   To support removal based on diversity jurisdiction, CNO must prove
13  by a preponderance of the evidence that the amount in controversy exceeds
14  $75,000. 28 USC § 1446(c)(2)(B). *California Spine and Neurosurgery Institute v.*
15  *Health Care Service Corporation,* 2019 WL 3219136, *1 (C.D. Cal. July 16,
16  2019). This may be done with summary judgment type evidence. *Beltran v.*
17  *ProCare Pharmacy, LLC* 2020 WL 748643, *1 (C.D. Cal. Feb. 14, 2020)

18       19.   Although Plaintiff does not specify an exact amount of damages, he
19  clearly seeks to recover over $75,000 in damages. Specifically, the death benefit
20  claimed by Plaintiff is at least $50,000, plus interest under the contract (see
21  Exhibit 1, Complaint, p. 6). Plaintiff also seeks to recover punitive damages from
22  CNO, as well as his costs and attorney's fees, and compensatory, general, special,
23  and consequential damages (*Id.*).

24       20.   "Attorneys' fees and punitive damages are included in the amount in
25  controversy for establishing diversity jurisdiction." *California Spine and*
26  *Neurosurgery Institute v. Health Care Service Corporation,* 2019 WL 3219136,
27  *2 (C.D. Cal. July 16, 2019).

28       21.   Future attorney fees are included in the amount in controversy.

"Because the law entitles Fritsch to an award of attorneys' fees if he is successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in controversy." *Fritsch v. Swift Transportation Company of Arizona, LLC,* 899 F.3d 785, 794 (9th Cir. 2018). Under California law, attorney fees and punitive damages may be recovered upon a showing of a breach by an insurer of the covenant of good faith and fair dealing. *Nickerson v. Stonebridge Life Ins. Co.,* 371 P.3d 242, 248 (Cal. 2016).

22.   Although the amount in controversy is usually computed without regard to interest and costs under 28 USC § 1332(a), interest owed under the terms of a contract as part of the "principal claim, rather than a mere accessory demand" is included in computing the amount in controversy. *Xerox Corp v. CBG Legal, Inc.,* 2015 WL 13309101, *3 (C.D. Cal. 2015). Here, the lawsuit concerns an Annuity contract which provides for a guaranteed rate of return while the owner or annuitant is alive and even after his/her death. The Complaint alleges "the Policy was funded with an initial $50,000 premium" as of June 21, 2006 (see Exhibit 1, Complaint, ¶¶ 16, 17). Assuming (without admitting) that the Policy has the characteristics alleged in the Complaint, its value would have been $63,864.55 as of February 19, 2020. See, Declaration of David Rikkers attached as Exhibit 4, ¶¶ 5-6.

23.   "The amount of fees commonly incurred in similar litigation can usually be reasonably estimated based on experience . . . Further, the Court may rely on its 'expertise in evaluating litigation expenses' to determine if Defendants have satisfied their burden 'to prove future attorneys' fees by a preponderance of the evidence.'" *Coronel v. Ford Motor Company,* 2020 WL 550690, *6 (C.D. Cal. Feb. 4, 2020) (citations omitted). *See, Reyes v. Staples Office Superstore, LLC,* 2019 WL 4187847, *5 (C.D. Cal. Sept. 3, 2019) (In employment discrimination case, future fees could be conservatively estimated at 100 hours x $300/hr = $30,000); *California Spine, supra,* Slip Op. at *2 (Court assumes some

combination of requested attorney fees, punitive damages, and "other relief" will make up the $8,388.15 gap between claimed actual damages and $75,000.00). Here, the attorney fees which would likely be awarded should the Plaintiff successfully pursue his claim to trial and a verdict would easily exceed the $11,136.45 "gap" between claimed policy benefits and the minimum amount in controversy.

24.   "[A] defendant 'must present evidence that punitive damages will more likely than not exceed the amount needed to increase the amount in controversy to $75,000' . . . [t]o establish probable punitive damages, 'a party asserting federal diversity jurisdiction may . . . introduce evidence of jury verdicts in cases involving analogous facts.'" *Reyes, supra, Slip Op. at *4*. The Court may take judicial notice of verdicts rendered in other cases. *Id*., fn. 2. Verdicts for punitive and other damages rendered in analogous cases of alleged insurance bad faith include:

    A. *Jones v. Commonwealth Land Title Ins. Co.,* Riverside Superior Court, RIC1612837 (June 24, 2019) ($600,000 emotional distress damages for bad faith failure to pay $300,000 title insurance claim.). See <u>Exhibit 5</u> attached hereto.

    B. *Lopez v. National General Assurance Co.,* Riverside Superior Court RIC1808643 (November 25, 2019) ($8,000,000 punitive damages verdict for bad faith failure to pay $147,333 fire loss claim). See <u>Exhibit 6</u> attached hereto.

    C. *Lopez v. IDS Ameriprise,* Los Angeles Superior Court, BC605264 (March 23, 2017) ($1,000,000 punitive verdict for bad faith failure to pay $134,072.98 water damage claim on homeowners policy). See <u>Exhibit 7</u> attached hereto.

## IV.  <u>NO ADMISSION</u>

25.   CNO does not concede in any way that the allegations in the Complaint are accurate, nor does CNO concede that Plaintiff is entitled to any compensatory or statutory damages, injunctive relief, restitution, civil penalties,

1  punitive damages, attorney fees or any other relief.

2  **V.  ADOPTION AND RESERVATION OF DEFENSES**

3    26.   Nothing in this Notice of Removal shall be interpreted as a waiver or

4  relinquishment of any of CNO's right to assert any defense or affirmative matter,

5  including, but not limited to, the defenses of: (1) lack of jurisdiction over the

6  person; (2) improper venue; (3) insufficiency of process; (4) insufficiency of

7  service of process; (5) improper joinder of claims and/or parties; (6) failure to

8  state a claim; (7) failure to join indispensable parties; (8) any other pertinent

9  defense available under California or Fed.R.Civ.P. 12, any state or federal statute,

10  or otherwise; or (9) arbitration.

11    27.   CNO reserves the right to supplement this Notice of Removal by

12  adding any jurisdiction defenses which may independently support a basis for

13  removal.

14    28.   As required by 28 U.S.C. §1446(d), written Notice of Removal is

15  being given to all adverse parties, and a copy of the Notice is being filed with the

16  Los Angeles County Superior Court.

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

1       WHEREFORE, Defendant CNO Services, LLC, by counsel, respectfully

2 requests that the State Court Action be removed from the Superior Court of the

3 State of California for the County of Los Angeles-Central District to the United

4 States District Court for the Central District of California, Western Division, and

5 proceed as an action properly removed thereto.

6       Dated this 28th day of February, 2020.

7                                 **FARMER CASE & FEDOR**

8

9                        By:    */s/ Anthony T. Case*

10                             ANTHONY T. CASE, ESQ.

11                             TIFFANY L. STEWARD, ESQ.

                              Attorneys for Defendant

12                             CNO Services, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S NOTICE OF REMOVAL

# EXHIBIT 1

Electronically FILED by Superior Court of California, County of Los Angeles on 01/28/2020 11:51 AM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Perez,Deputy Clerk
20STCV03454

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
CNO SERVICES, LLC

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

JOHN NJOROGE

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: <br> *(El nombre y dirección de la corte es):* 111 N. Hill St., Los Angeles, CA 90012 | CASE NUMBER: *(Número del Caso):* <br> 20STCV03454 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Peter Borenstein (SBN 304266), P.O. Box 885, Culver City, CA 90232

| DATE: 01/28/2020   Sherri R. Carter Executive Officer / Clerk of Court | Clerk, by | Ricardo Perez | , Deputy |
|---|---|---|---|
| *(Fecha)* | *(Secretario)* | | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010).)*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*
3. [x] on behalf of *(specify):*

   under: [x] CCP 416.10 (corporation)       [ ] CCP 416.60 (minor)
   [ ] CCP 416.20 (defunct corporation)   [ ] CCP 416.70 (conservatee)
   [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
   [ ] other *(specify):*
4. [ ] by personal delivery on *(date)*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

Electronically FILED by Superior Court of California, County of California on 01/28/2020 11:51 AM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Perez, Deputy Clerk
20STCV03454

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Teresa Beaudet

Peter Borenstein (SBN 304266)
P.O. Box 885
Culver City, CA 90232
(213) 362-8740 (tel)
(877) 460-3681 (fax)
peter@brnstn.org

Attorney for Plaintiff
JOHN NJOROGE

**RECEIVED**
FEB 0 4 2020
LEGAL OPERATIONS SUPPORT

## IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT

| | |
|---|---|
| JOHN NJOROGE, <br><br> Plaintiff, <br><br> vs. <br><br> CNO SERVICES, LLC, <br><br> Defendant. | Case No.  20STCV03454 <br><br> **VERIFIED COMPLAINT FOR:** <br><br> **1) BAD FAITH BREACH OF IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING** <br> **2) BAD FAITH FAILURE TO PROPERLY INVESTIGATE CLAIM** <br> Dept: <br> Judge: <br><br> Logged By: _____ <br> Date Logged: _____ <br> Fwded to _____ For File <br> Date Fwded: _____ |

John Njoroge ("Plaintiff") alleges for his complaint as follows:

## INTRODUCTION

1.      On June 21, 2006, Robertson Kimondo ("Mr. Kimondo") bought a Flexible Premium Index Deferred Fixed Annuity policy ("the Policy") from Defendant CNO Services, LLC ("Defendant"), then known as Conseco Insurance Company, and named his son, Plaintiff, as the sole beneficiary of the policy.

2.      Mr. Kimondo established the Annuity with an initial premium payment of $50,000 and subsequent fifty-dollar monthly premium thereafter until his death.

3.      At all relevant times and until April 13, 2019, Plaintiff was incarcerated in the California state prison system.

4.      On May 17, 2008, Mr. Kimondo passed away.

VERIFIED COMPLAINT – NJOROGE V. CNO SERVICES, LLC
1

5.     Pursuant to the terms of the Policy, Plaintiff was entitled to its value at the time of Mr. Kimondo's death as the sole beneficiary.

6.     When Plaintiff was released from prison in 2019, he submitted a claim to Defendant to obtain the benefit of the Policy that his father had taken out for him.

7.     In a letter dated August 21, 2019, Defendant refused to process Plaintiff's claim, contending that "the policy is no longer inforce [sic]."

8.     On October 8, 2019, Plaintiff sent a formal demand through counsel to Defendant to honor the Policy and pay out the benefit to Plaintiff pursuant to its terms.

9.     On October 15, 2019, Defendant responded by letter and indicated that they were unable to locate any record of the Policy.

10.     Upon information and belief, Defendant wrongfully and in bad faith misappropriated the value of the Policy to Plaintiff's detriment.

11.     Furthermore, upon information and belief, Defendant also failed to properly investigate Plaintiff's claim in bad faith.

12.     Now, Plaintiff seeks to recover the value of the Policy upon Mr. Kimondo's death plus interest since 2006, punitive damages, and attorney's fees for Defendant's bad faith denial of his claim.

## THE PARTIES

12.     Plaintiff John Njoroge is a resident of the County of Los Angeles, State of California.

13.     Defendant CNO Services, LLC is a limited liability company incorporated in the State of Indiana.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over all causes of action asserted herein because all causes of action arise out of the conduct of an insurer admitted in California and regulated by the California Department of Insurance.

15.     Venue is proper in this Court pursuant to Code of Civil Procedure section 395, subdivision (a) because Defendant is a foreign corporate entity.

## FACTUAL BACKGROUND

16.     On June 21, 2006, Mr. Kimondo bought the Policy (Policy No. ███2370) from Defendant and named Plaintiff as the sole beneficiary.

17.     The Policy was funded with an initial $50,000 premium.

VERIFIED COMPLAINT – NJOROGE V. CNO SERVICES, LLC

2

18.     Upon information and belief, Mr. Kimondo paid subsequent monthly $50 premiums until his death.

19.     On or around June 21, 2006, Defendant sent the relevant paperwork and executed agreement to Plaintiff in prison. This was the only correspondence that Plaintiff ever received from Defendant.

20.     On May 17, 2008, Mr. Kimondo passed away.

21.     Defendant was required to send notice of Mr. Kimondo's death and relevant information regarding how to claim the Policy as a beneficiary. (*Westrick v. State Farm Ins.* (1982) 137 Cal.App.3d 685, 692.)

22.     Defendant never informed Plaintiff of his rights as a beneficiary under the terms of the Policy at any time, including upon Mr. Kimondo's death.

23.     On April 13, 2019, Plaintiff was released from prison.

24.     On August 15, 2019, after consulting with an attorney, Plaintiff submitted the appropriate Annuity Claim Form to Defendant.

25.     In a letter dated August 21, 2019, Plaintiff was informed by Defendant that it had "received [his] request for Beneficiary change" but was "unable to process such a request because the policy is no longer inforce [sic]."

26.     Plaintiff did not submit a request for Beneficiary change form to Defendant.

27.     Meanwhile, the term "inforce" appears to be a malapropism; the word is obviously not used correctly, if it exists at all, in Defendant's official correspondence with Plaintiff.

28.     Subsequently, on October 8, 2019, Plaintiff made a formal demand through counsel for the disbursement of the value of the Policy as requested in the August 15 claim.

29.     Defendant responded with a letter dated October 15, 2019 requesting a copy of the Policy's terms from Plaintiff.

30.     On October 30, 2019, Plaintiff provided a copy of the relevant Policy documents to Defendant.

31.     In a letter dated November 6, 2019, Defendant indicated that it had received the policy documents but that "after researching both active and inactive files, [it] was unable to locate the policy you referenced."

32.     Defendant's November 6 response conflicts with the August 21 response: The August 21 response clearly indicates that the Policy is no longer "inforce" while the November 6 response suggests that the Policy never existed or has been lost.

33.     In either case, Defendant has refused to accept or even process Plaintiff's claim on the Policy.

34.     Defendant's conflicting responses to Plaintiff's claim are evidence of its bad faith.

35.     As a result of Defendant's bad faith in refusing to accept Plaintiff's claim on the Policy as its only beneficiary nor investigate the claim, Defendant has been deprived of more than $50,000 due to him under its terms.

36.     Now, Plaintiff seeks to recover the value of the Policy pursuant to its terms plus interest since 2008, when Mr. Kimondo passed away.

37.     Furthermore, Plaintiff seeks punitive damages and attorney's fees for Defendant's bad faith denial of his valid claim as the Policy's sole beneficiary.

## FIRST CAUSE OF ACTION

### (Bad Faith Breach of Implied Obligation of Good Faith and Fair Dealing)

38.     Plaintiff hereby realleges and incorporates by this reference, as though set forth in full, the allegations in paragraphs 1 through 37, inclusive.

39.     On June 21, 2006, the Policy was executed between Mr. Kimondo and Defendant, the admitted insurer, with Plaintiff named as the beneficiary.

40.     On May 17, 2008, Mr. Kimondo passed away.

41.     On August 15, 2019, Plaintiff submitted his claim for the Policy as the sole beneficiary.

42.     On August 21, 2019, Defendant refused to process the claim, contending that "the policy is no longer inforce [sic]."

43.     The August 21 letter erroneously indicates that Plaintiff had submitted a beneficiary change form.

44.     The August 21 letter does not explain what "inforce" means or its bearing on Plaintiff's claim, if any.

45.     Upon information and belief, Defendant denied the claim out of hand and without reviewing the claim simply because it referenced a policy more than ten years old.

46.     Plaintiff alleges that Defendant was unreasonable in this first denial of Plaintiff's claim.

47.     Even after being contacted by counsel and receiving the original policy documents and agreement, Defendant still refused to process the claim, indicating in a letter dated November 6, 2019 that "[a]fter researching both active and inactive files, we were unable to locate the policy you referenced."

48.     After receiving the Policy documents, Defendant had no reasonable justification for refusing to pay out Plaintiff's claim.

49.     Therefore, Plaintiff alleges that Defendant refused to process his claim in bad faith.

50.     Now, Plaintiff seeks to recover the value of the Policy at the time of Mr. Kimondo's death in 2006 plus interest since that time.

51.     Additionally, Plaintiff seeks attorney's fees and punitive damages for Defendant's bad faith denial of his claim. (*Archdale v. American Internat. Specialty Lines Ins. Co.* (2007) 154 Cal.App.4th 449, 467.)

## SECOND CAUSE OF ACTION

### (Bad Faith Failure to Properly Investigate Claim)

52.     Plaintiff hereby realleges and incorporates by this reference, as though set forth in full, the allegations in paragraphs 1 through 51, inclusive.

53.     "When investigating a claim, an insurance company has a duty to diligently search for evidence which supports its insured's claim." (*Mariscal v. Old Republic Ins. Co.* (1996) 42 Cal.App.4th 1617, 1620.)

54.     On August 15, 2019, Plaintiff submitted his claim for the Policy as the sole beneficiary.

55.     Four days later on August 21, 2019, Defendant responded to Plaintiff's claim by letter indicating that "the policy is no longer inforce [sic]."

56.     Upon a formal demand by counsel, Defendant responded again in a letter dated November 6, 2019, that "[a]fter researching both active and inactive files, we were unable to locate the policy you referenced."

57.     The August 15 response suggests that the Policy does exist and that Defendant does have a record of it whereas the November 6 response indicates that no record of the policy exists.

58.     The discrepancy between Defendant's responses is evidence of its bad faith and failure to investigate Plaintiff's claim.

59.     Because of Defendant's failure to properly investigate Plaintiff's claim, Plaintiff has not been able to claim the value of the Policy that Mr. Kimondo meant for him.

60.     Now, Plaintiff seeks to recover the value of the Policy at the time of Mr. Kimondo's death in 2006 plus interest since that time.

61.     Additionally, Plaintiff seeks attorney's fees and punitive damages for Defendant's bad faith denial of his claim. (*Archdale v. American Internat. Specialty Lines Ins. Co.* (2007) 154 Cal.App.4th 449, 467.)

WHEREFORE, Plaintiffs prays for judgment as follows:

**ON ALL CAUSES OF ACTION.**

1.     For recovery of the value of the Annuity at the time of Mr. Kimondo's death, estimated to be $50,000, plus interest since 2008.

2.     For punitive damages against Defendant for its bad faith breach of the implied obligation of good faith and fair dealing and failure to investigate Plaintiff's claim.

3.     For reasonable costs and attorney's fees against Defendant for its bad faith breach of the implied obligation of good faith and fair dealing and failure to investigate Plaintiff's claim.

4.     For any other compensatory, general, special, and consequential damages against Defendant.

4.     For such other and further relief as the Court may deem proper.

**DEMAND FOR JURY TRIAL**
Plaintiffs hereby demands trial by jury on all issues so triable.

Respectfully submitted,

Dated:   1/28/20                         By:_____

                                        PETER BORENSTEIN
                                        Attorney for Plaintiff
                                        JOHN NJOROGE

VERIFIED COMPLAINT – NJOROGE V. CNO SERVICES, LLC
6

**VERIFICATION**

I, JOHN NJOROGE, am the Plaintiff in this action. I have read the foregoing complaint and it is true of my own knowledge, except as to those matters stated on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury of the laws of the State of California that the foregoing is true and correct.

Executed on ___1/22/2020___ in Los Angeles, California.

John Njoroge

John Njoroge

VERIFIED COMPLAINT – NJOROGE V. CNO SERVICES, LLC

Electronically FILED by Superior Court of California, County of Los Angeles on 01/28/2020 03:00 PM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Perez,Deputy Clerk

**CM-010**

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*<br>Peter Borenstein (SBN 304266)<br>P.O. Box 885<br>Culver City, CA 90232<br><br>TELEPHONE NO.: 213-362-8740    FAX NO.: 877-460-3681<br>ATTORNEY FOR *(Name):* John Njoroge | **FOR COURT USE ONLY** |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Los Angeles
STREET ADDRESS: 111 N. Hill St.
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME:

**CASE NAME:**
Njoroge v. CNO Services, LLC

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | **CASE NUMBER:** 20STCV03454 |
|---|---|---|
| ☑ Unlimited      ☐ Limited<br>(Amount            (Amount<br>demanded         demanded is<br>exceeds $25,000)  $25,000 or less) | ☐ Counter   ☐ Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| **Auto Tort** | **Contract** | **Provisionally Complex Civil Litigation** |
|---|---|---|
| ☐ Auto (22) | ☑ Breach of contract/warranty (06) | **(Cal. Rules of Court, rules 3.400–3.403)** |
| ☐ Uninsured motorist (46) | ☐ Rule 3.740 collections (09) | ☐ Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | ☐ Other collections (09) | ☐ Construction defect (10) |
| **Damage/Wrongful Death) Tort** | ☐ Insurance coverage (18) | ☐ Mass tort (40) |
| ☐ Asbestos (04) | ☐ Other contract (37) | ☐ Securities litigation (28) |
| ☐ Product liability (24) | **Real Property** | ☐ Environmental/Toxic tort (30) |
| ☐ Medical malpractice (45) | ☐ Eminent domain/Inverse | ☐ Insurance coverage claims arising from the |
| ☐ Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | ☐ Wrongful eviction (33) | types (41) |
| ☐ Business tort/unfair business practice (07) | ☐ Other real property (26) | **Enforcement of Judgment** |
| ☐ Civil rights (08) | **Unlawful Detainer** | ☐ Enforcement of judgment (20) |
| ☐ Defamation (13) | ☐ Commercial (31) | **Miscellaneous Civil Complaint** |
| ☐ Fraud (16) | ☐ Residential (32) | ☐ RICO (27) |
| ☐ Intellectual property (19) | ☐ Drugs (38) | ☐ Other complaint *(not specified above)* (42) |
| ☐ Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| ☐ Other non-PI/PD/WD tort (35) | ☐ Asset forfeiture (05) | ☐ Partnership and corporate governance (21) |
| **Employment** | ☐ Petition re: arbitration award (11) | ☐ Other petition *(not specified above)* (43) |
| ☐ Wrongful termination (36) | ☐ Writ of mandate (02) | |
| ☐ Other employment (15) | ☐ Other judicial review (39) | |

2. This case ☐ is   ☑ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties      d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel   e. ☐ Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve              in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence         f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ☐ punitive
4. Number of causes of action *(specify):* Breach of Implied Obligation of Good Faith and Fair Dealing; Failure to Investigate
5. This case ☐ is   ☑ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 1/28/20
Peter Borenstein
_____          ▶ _____
(TYPE OR PRINT NAME)                           (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courtinfo.ca.gov* |

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Page 2 of 2

| SHORT TITLE:   Njoroge v. CNO Services, LLC | CASE NUMBER |
|---|---|

# CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

> **This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

> **Applicable Reasons for Choosing Court Filing Location (Column C)**

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.

7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | A<br>Civil Case Cover Sheet Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| **Other Personal Injury/ Property Damage/Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 1, 11 |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 1, 11 |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1, 4, 11 |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1, 4, 11 |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1, 4, 11 |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1, 4, 11 |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 1 of 4

| SHORT TITLE: | Njoroge v. CNO Services, LLC | CASE NUMBER |
|---|---|---|

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1, 2, 3 |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ A6109  Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☑ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2 |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012  Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ A6031  Tortious Interference | 1, 2, 3, 5 |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation          Number of parcels_____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032  Quiet Title | 2, 6 |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2, 6, 11 |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE: | Njoroge v. CNO Services, LLC | CASE NUMBER |
|---|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus<br>☐ A6152  Writ - Mandamus on Limited Court Case Matter<br>☐ A6153  Writ - Other Limited Court Case Review | 2, 8<br>2<br>2 |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment<br>☐ A6160  Abstract of Judgment<br>☐ A6107  Confession of Judgment (non-domestic relations)<br>☐ A6140  Administrative Agency Award (not unpaid taxes)<br>☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112  Other Enforcement of Judgment Case | 2, 5, 11<br>2, 6<br>2, 9<br>2, 8<br>2, 8<br>2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only<br>☐ A6040  Injunctive Relief Only (not domestic/harassment)<br>☐ A6011  Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8<br>2, 8<br>1, 2, 8<br>1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment With Damages<br>☐ A6123  Workplace Harassment With Damages<br>☐ A6124  Elder/Dependent Adult Abuse Case With Damages<br>☐ A6190  Election Contest<br>☐ A6110  Petition for Change of Name/Change of Gender<br>☐ A6170  Petition for Relief from Late Claim Law<br>☐ A6100  Other Civil Petition | 2, 3, 9<br>2, 3, 9<br>2, 3, 9<br>2<br>2, 7<br>2, 3, 8<br>2, 9 |

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

| SHORT TITLE: Njoroge v. CNO Services, LLC | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON: | ADDRESS: |
|---|---|
| ☐ 1. ☑ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7.  ☐ 8. ☐ 9. ☐ 10. ☐ 11. | 928 1/2 W. 54th St. |

| CITY: | STATE: | ZIP CODE: |
|---|---|---|
| Los Angeles | CA | 90037 |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the _Central_ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: _1/28/20_

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 4 of 4

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF LOS ANGELES**<br><br>COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012<br><br>**NOTICE OF CASE ASSIGNMENT**<br><br>**UNLIMITED CIVIL CASE** | Reserved for Clerk's File Stamp<br><br>**FILED**<br>Superior Court of California<br>County of Los Angeles<br>01/28/2020<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____Ricardo Perez_____ Deputy |
| Your case is assigned for all purposes to the judicial officer indicated below. | CASE NUMBER:<br>20STCV03454 |

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✓ | Teresa A. Beaudet | 50 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on 01/28/2020
    (Date)

Sherri R. Carter, Executive Officer / Clerk of Court

By Ricardo Perez_____, Deputy Clerk

LACIV 190 (Rev 6/18)
LASC Approved 05/06

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007.  They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date.  All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference.  These matters may be heard and resolved at this conference.  At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status.  If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

| **FW-003** | Order on Court Fee Waiver (Superior Court) |
|---|---|

Clerk stamps date here when form is filed.

**(1) Person who asked the court to waive court fees:**

Name: John Njoroge

Street or mailing address: _____

City: _____ State: _____ Zip: _____

**(2) Lawyer, if person in (1) has one** *(name, firm name, address, phone number, e-mail, and State Bar number):*

Peter Borenstein

P.O. Box 885

peter@brnstn.org

304266

**(3)** A request to waive court fees was filed on *(date):* 01/28/2020

☐ The court made a previous fee waiver order in this case on *(date):* _____

**FILED**
Superior Court of California
County of Los Angeles

**01/28/2020**

Sherri R. Carter, Executive Officer / Clerk of Court

By: _____ Ricardo Perez _____ Deputy

*Fill in court name and street address:*

**Superior Court of California, County of Los Angeles**

Stanley Mosk Courthouse
111 North Hill Street
Los Angeles CA 90012

*Fill in case number and name:*

**Case Number:**
20STCV03454

**Case Name:**
JOHN NJOROGE vs CNO SERVICES, LLC

*Read this form carefully. All checked boxes ☑ are court orders.*

**Notice:** The court may order you to answer questions about your finances and later order you to pay back the waived fees. If this happens and you do not pay, the court can make you pay the fees and also charge you collection fees. If there is a change in your financial circumstances during this case that increases your ability to pay fees and costs, you must notify the trial court within five days. (Use form FW-010.) If you win your case, the trial court may order the other side to pay the fees. If you settle your civil case for **$10,000** or more, the trial court will have a lien on the settlement in the amount of the waived fees. The trial court may not dismiss the case until the lien is paid.

**(4)** After reviewing your:   ☑ *Request to Waive Court Fees*   ☐ *Request to Waive Additional Court Fees*
**the court makes the following orders:**

a. ☑ The court **grants** your request, as follows:

(1) ☑ **Fee Waiver.** The court grants your request and waives your court fees and costs listed below. *(Cal. Rules of Court, rules 3.55 and 8.818.)* You do not have to pay the court fees for the following:

- Filing papers in superior court
- Making copies and certifying copies
- Sheriff's fee to give notice
- Court fee for phone hearing
- Giving notice and certificates
- Sending papers to another court department
- Reporter's fee for attendance at hearing or trial, if the court is not electronically recording the proceeding and you request that the court provide an official reporter
- Assessment for court investigations under Probate Code section 1513, 1826, or 1851
- Preparing, certifying, copying, and sending the clerk's transcript on appeal
- Holding in trust the deposit for a reporter's transcript on appeal under rule 8.130 or 8.834
- Making a transcript or copy of an official electronic recording under rule 8.835

(2) ☐ **Additional Fee Waiver.** The court grants your request and waives your additional superior court fees and costs that are checked below. *(Cal. Rules of Court, rule 3.56.)* You do not have to pay for the checked items.

☐ Jury fees and expenses   ☐ Fees for a peace officer to testify in court
☐ Fees for court-appointed experts   ☐ Court-appointed interpreter fees for a witness
☐ Other *(specify):* _____

Judicial Council of California, www.courts.ca.gov
Revised September 1, 2019, Mandatory Form
Government Code, § 68634(e)
Cal. Rules of Court, rule 3.52
**Order on Court Fee Waiver (Superior Court)**   FW-003, Page 1 of 3

| Your name: John Njoroge | Case Number:<br>20STCV03454 |
|---|---|

b. ☐ The court **denies** your fee waiver request because:

> **Warning!** If you miss the deadline below, the court cannot process your request for hearing or the court papers you filed with your original request. If the papers were a notice of appeal, the appeal may be dismissed.

(1) Your request is incomplete. You have **10 days** after the clerk gives notice of this Order (see date of service ☐ on next page) to:

- Pay your fees and costs, or
- File a new revised request that includes the incomplete items listed:
  ☐ Below   ☐ On Attachment 4b(1)

_____
_____
_____
_____

(2) ☐ The information you provided on the request shows that you are not eligible for the fee waiver you requested for the reasons stated: ☐ Below   ☐ On Attachment 4b(2)

_____
_____
_____
_____
_____

The court has enclosed a blank *Request for Hearing About Court Fee Waiver Order (Superior Court)* (form FW-006). You have **10 days** after the clerk gives notice of this order (see date of service below) to:
- Pay your fees and costs in full or the amount listed in c below, or
- Ask for a hearing in order to show the court more information. *(Use form FW-006 to request hearing.)*

c. (1) ☐ The court needs more information to decide whether to grant your request. You must go to court on the date on page 3. The hearing will be about the questions regarding your eligibility that are stated:
  ☐ Below   ☐ On Attachment 4c(1)

_____
_____
_____
_____

(2) ☐ Bring the items of proof to support your request, if reasonably available, that are listed:
  ☐ Below   ☐ On Attachment 4c(2)

_____
_____
_____
_____
_____

**This is a Court Order.**

| Your name:   John Njoroge | Case Number:<br>20STCV03454 |
|---|---|

**Hearing Date**

→ Date: _____   Time: _____
Dept.: _____   Room: _____

Name and address of court if different from above:
_____
_____
_____

**Warning!** If item c(1) is checked, and you do not go to court on your hearing date, the judge will deny your request to waive court fees, and you will have 10 days to pay your fees. If you miss that deadline, the court cannot process the court papers you filed with your request. If the papers were a notice of appeal, the appeal may be dismissed.

Sherri R. Carter Executive Officer / Clerk of Court

Ricardo Perez

Date: 01/28/2020 _____

_____
*Signature of (check one):*   ☐ *Judicial Officer*   ☑ *Clerk, Deputy*

## Request for Accommodations

Assistive listening systems, computer-assisted real-time captioning, or sign language interpreter services are available if you ask at least five days before the hearing. Contact the clerk's office for *Request for Accommodations by Persons With Disabilities and Response* (form MC-410). (Civ. Code, § 54.8.)

## Clerk's Certificate of Service

I certify that I am not involved in this case and *(check one):*

☐ I handed a copy of this Order to the party and attorney, if any, listed in ① and ②, at the court, on the date below.

☐ This order was mailed first class, postage paid, to the party and attorney, if any, at the addresses listed in ① and ②, from *(city):* Los Angeles _____, California, on the date below.
   ☐ A certificate of mailing is attached.

Date: 01/28/2020 _____

Sherri R. Carter, Executive Officer / Clerk of Court

Clerk, by Ricardo Perez _____, Deputy
Name: _____

**This is a Court Order.**

Electronically FILED by Superior Court of California, County of Los Angeles on 01/30/2020 12:32 PM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Sanchez,Deputy Clerk

**POS-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Peter Borenstein (SBN 304266)<br>P.O. Box 885<br>Culver City, CA 90232<br><br>TELEPHONE NO.: 213-362-8740       FAX NO. *(Optional):* 877-460-3681<br>E-MAIL ADDRESS *(Optional):* peter@brnstn.org<br>ATTORNEY FOR *(Name):* John Njoroge | |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles |
|---|
| STREET ADDRESS: 111 N. Hill St.<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: Los Angeles 90012<br>BRANCH NAME: |

| PLAINTIFF/PETITIONER: John Njoroge | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: CNO Services, LLC | 20STCV03454 |

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.: |
|---|---|

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. [✓] summons
   b. [✓] complaint
   c. [ ] Alternative Dispute Resolution (ADR) package
   d. [✓] Civil Case Cover Sheet *(served in complex cases only)*
   e. [ ] cross-complaint
   f. [✓] other *(specify documents):* Notice of Case Assignment

3. a. Party served *(specify name of party as shown on documents served):*
      CNO Services, LLC

   b. [✓] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
      Gary Bhojwani, President

4. Address where the party was served:
   11825 N. Pennsylvania St., Carmel, IN 46032
5. I served the party *(check proper box)*
   a. [ ] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):*            (2) at *(time):*
   b. [ ] **by substituted service.** On *(date):*           at *(time):*           I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):*            from *(city):*            or [ ] a declaration of mailing is attached.

      (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

| PLAINTIFF/PETITIONER: John Njoroge | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: CNO Services, LLC | 20STCV03454 |

5.  c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*            (2) from *(city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*) (Code Civ. Proc., § 415.30.)*

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d. ☑ **by other means** *(specify means of service and authorizing code section):*

    Certified Mail-Return Receipt Requested per CCP Sections 415.40 and 416.l0(b)

  ☐ Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:
  a. ☐ as an individual defendant.
  b. ☐ as the person sued under the fictitious name of *(specify):*
  c. ☐ as occupant.
  d. ☑ On behalf of *(specify):*
    under the following Code of Civil Procedure section:

    ☑ 416.10 (corporation)        ☐ 415.95 (business organization, form unknown)
    ☐ 416.20 (defunct corporation)    ☐ 416.60 (minor)
    ☐ 416.30 (joint stock company/association)    ☐ 416.70 (ward or conservatee)
    ☐ 416.40 (association or partnership)    ☐ 416.90 (authorized person)
    ☐ 416.50 (public entity)           ☐ 415.46 (occupant)
                          ☐ other:

7.  **Person who served papers**
  a. Name: Peter Borenstein
  b. Address: P.O. Box 885, Culver City, CA 90232
  c. Telephone number: 213-362-8740
  d. **The fee** for service was: $ 4.95
  e. I am:
    (1) ☑ not a registered California process server.
    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
    (3) ☐ a registered California process server:
      (i) ☐ owner ☐ employee ☐ independent contractor.
      (ii) Registration No.:
      (iii) County:

8.  ☑ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9.  ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: 1/30/20

Peter Borenstein
  (NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)       ▶          (SIGNATURE )

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>02/04/2020<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: ___Gerald Mack___ Deputy |
| PLAINTIFF:<br>John Njoroge | |
| DEFENDANT:<br>CNO Services, LLC | |
| **NOTICE OF CASE MANAGEMENT CONFERENCE** | CASE NUMBER:<br>20STCV03454 |

TO THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve this notice of hearing on all parties/attorneys of record forthwith, and meet and confer with all parties/attorneys of record about the matters to be discussed no later than 30 days before the Case Management Conference.

Your Case Management Conference has been scheduled at the courthouse address shown above on:

| Date: 05/18/2020 | Time: 8:30 AM | Dept.: 50 |
|---|---|---|

NOTICE TO DEFENDANT:   THE SETTING OF THE CASE MANAGEMENT CONFERENCE DOES NOT EXEMPT THE DEFENDANT FROM FILING A RESPONSIVE PLEADING AS REQUIRED BY LAW.

Pursuant to California Rules of Court, rules 3.720-3.730, a completed Case Management Statement (Judicial Council form # CM-110) must be filed at least 15 calendar days prior to the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record. You must be familiar with the case and be fully prepared to participate effectively in the Case Management Conference.

At the Case Management Conference, the Court may make pretrial orders including the following, but not limited to, an order establishing a discovery schedule; an order referring the case to Alternative Dispute Resolution (ADR); an order reclassifying the case; an order setting subsequent conference and the trial date; or other orders to achieve the goals of the Trial Court Delay Reduction Act (Gov. Code, § 68600 et seq.)

Notice is hereby given that if you do not file the Case Management Statement or appear and effectively participate at the Case Management Conference, the Court may impose sanctions, pursuant to LASC Local Rule 3.37, Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.360 and 583.410, Government Code section 68608, subdivision (b) and California Rules of Court, rule 2.2 et seq.

Dated: __02/04/2020__                                             ___Teresa A. Beaudet / Judge___
                                                                                          Judicial Officer

---

## CERTIFICATE OF SERVICE

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named below:

☐ by depositing in the United States mail at the courthouse in __Los Angeles__, California, one copy of the original filed herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid.

☐ by personally giving the party notice upon filing of the complaint.

Peter Borenstein
P.O. Box 885
Culver City, CA 90232

Sherri R. Carter, Executive Officer / Clerk of Court

Dated: __02/04/2020__                                     By __Gerald Mack__
                                                                                  Deputy Clerk

| LACIV 132 (Rev. 07/13)<br>LASC Approved 10-03<br>For Optional Use | **NOTICE OF<br>CASE MANAGEMENT CONFERENCE** | Cal. Rules of Court, rules 3.720-3.730<br>LASC Local Rules, Chapter Three |
|---|---|---|

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF LOS ANGELES

Reserved for Clerk's File Stamp

COURTHOUSE ADDRESS:
Stanley Mosk Courthouse
111 North Hill Street, Los Angeles, CA 90012

**FILED**
Superior Court of California
County of Los Angeles

02/04/2020

Sherri R. Carter, Executive Officer / Clerk of Court

By: _____ Gerald Mack _____ Deputy

PLAINTIFF/PETITIONER:
John Njoroge

DEFENDANT/RESPONDENT:
CNO Services, LLC

### CERTIFICATE OF MAILING

CASE NUMBER:
20STCV03454

I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.

Peter  Borenstein
Peter Borenstein, Attorney at Law
P.O. Box 885
Culver City, CA  90232

Sherri R. Carter, Executive Officer / Clerk of Court

Dated: 02/4/2020

By:  _Gerald Mack_____
Deputy Clerk

### CERTIFICATE OF MAILING

# EXHIBIT 2

Peter Borenstein, Attorney at Law
P.O. Box 885
Culver City, CA 90232





PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

**CERTIFIED MAIL**

7019 0700 0000 7737 8736

U.S. POSTAGE PAID
FCM LG ENV
LOS ANGELES, CA
90013
JAN 30, 20
AMOUNT

**$4.95**

R2307M152590-11

1024    46032

CNO Services, LLC
c/o Gary Bhojwani, President
11825 N. Pennsylvania St.
Carmel, IN 46032

RECEIVED
FEB 0 4 2020
SABRINA LEBLANC

# USPS Tracking®

FAQs >

## Track Another Package +

**Tracking Number:** 70190700000077378736

Remove ✕

Your item was picked up at a postal facility at 8:06 am on February 4, 2020 in CARMEL, IN 46032.

## ⊘ Delivered

February 4, 2020 at 8:06 am
Delivered, Individual Picked Up at Postal Facility
CARMEL, IN 46032

**Get Updates** ⌄

Feedback

---

**Text & Email Updates**                                                    ⌄

---

**Tracking History**                                                        ⌃

**February 4, 2020, 8:06 am**
Delivered, Individual Picked Up at Postal Facility
CARMEL, IN 46032
Your item was picked up at a postal facility at 8:06 am on February 4, 2020 in CARMEL, IN 46032.

**February 3, 2020, 10:23 am**
Notice Left (No Authorized Recipient Available)
CARMEL, IN 46032

**February 3, 2020, 4:14 am**
Departed USPS Regional Destination Facility
INDIANAPOLIS IN DISTRIBUTION CENTER

**February 2, 2020, 3:18 pm**
Arrived at USPS Regional Destination Facility

INDIANAPOLIS IN DISTRIBUTION CENTER

**February 2, 2020**
In Transit to Next Facility

**January 30, 2020, 12:04 pm**
USPS in possession of item
LOS ANGELES, CA 90013

---

## Product Information ∧

**Postal Product:**
First-Class Mail®

**Features:**
Certified Mail™

---

See Less ∧

Feedback

# Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

**FAQs**

**EXHIBIT 3**

Anthony T. Case, Esq. (SBN 149583)
Tiffany L. Steward, Esq. (SBN 279978)
FARMER CASE & FEDOR
402 West Broadway, Suite 1100
San Diego, California 92101
Tel: (619) 338-0300 | Fax: (619) 338-0180
tcase@farmercase.com
tsteward@farmercase.com

Attorneys for Defendant,
CNO Services, LLC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| JOHN NJOROGE | CASE NO. _____ |
|---|---|
| Plaintiff, | [Los Angeles Superior Court Case No. 20STCV03454] |
| v. | |
| CNO SERVICES, LLC, | **DECLARATION OF KARL KINDIG IN SUPPORT OF NOTICE OF REMOVAL BY DEFENDANT CNO SERVICES, LLC** |
| Defendant. | |

KARL KINDIG ("Affiant"), being first duly sworn upon his oath, deposes and states:

1.      Affiant is an adult fully competent to testify and makes this Affidavit on personal knowledge.

2.      Affiant is the Senior Vice President and Secretary of CNO Services, LLC, and is authorized to make this Affidavit on its behalf. Affiant is familiar with the business and operations of CNO Services, LLC

3.      CNO Services, LLC is an Indiana Limited Liability Company with its principal place of business in Carmel, Indiana, and all of its members and their citizenship are as follows:

     (a)    CNO Financial Group, Inc., a Delaware corporation with its principal place of business in Carmel, Indiana;

     (b)    CDOC, Inc., a Delaware corporation with its principal place of business in Carmel, Indiana; and

     (c)    CNO Management Services Company, a Texas corporation with its principal place of business in Carmel, Indiana.

4.    Further Affiant sayeth naught.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

Executed on February 24 , 2020.

_Karl W Kindig_
Karl Kindig

STATE OF  Indiana  )
                ) SS:
COUNTY OF  Hamilton  )

Before me, a Notary Public in and for said County and State, appeared Karl Kindig this 24th day of February, 2020, and who, being duly sworn upon his oath acknowledged the signature on the above and foregoing Declaration as his free and voluntary act and that the statements therein are true to the best of his knowledge.

_Stephanie L. Morris_
Notary Signature
Stephanie L. Morris
Notary Printed Name

My County of Residence:  Hendricks

My Commission Expires:  March 20, 2021

STEPHANIE LYNN MORRIS
Notary Public
Hendricks County, State of Indiana
Commission Expires March 20, 2021
Commission Number: 643061
SEAL

DECLARATION OF KARL KINDIG IN SUPPORT OF NOTICE OF REMOVAL BY DEFENDANT CNO SERVICES, LLC

# EXHIBIT 4

1   Anthony T. Case, Esq. (SBN 149583)
2   Tiffany L. Steward, Esq. (SBN 279978)
    FARMER CASE & FEDOR
3   402 West Broadway, Suite 1100
    San Diego, California  92101
4   Tel: (619) 338-0300  |  Fax: (619) 338-0180
5   tcase@farmercase.com
6   tsteward@farmercase.com
7   Attorneys for Defendant,
    CNO Services, LLC

8

9                    **UNITED STATES DISTRICT COURT**
10                   **CENTRAL DISTRICT OF CALIFORNIA**
11                        **WESTERN DIVISION**

| | |
|---|---|
| 12  JOHN NJOROGE | CASE NO. _____ |
| 13                    Plaintiff, | [Los Angeles Superior Court Case |
| 14       v. |   No. 20STCV03454] |
| 15  CNO SERVICES, LLC, | **DECLARATION OF DAVID** |
| 16 | **RIKKERS IN SUPPORT OF** |
| 17                    Defendant. | **NOTICE OF REMOVAL BY** |
| 18 | **DEFENDANT CNO SERVICES, LLC** |

19       **DAVID RIKKERS** ("Affiant"), being first duly sworn upon his oath,

20   deposes and states:

21       1.       Affiant is an adult fully competent to testify and makes this Affidavit

22   on personal knowledge.

23       2.       Affiant is a Legal Interface and Compliance Analyst employed by

24   CNO Services, LLC in Carmel, IN ("Services"). Affiant's job involves supporting

25   the insurance operations of affiliates of CNO Financial Group, Inc. ("CNO").

26   Services is an affiliate of CNO but is not an insurance company and does not

27   issue insurance policies. Services provides shared administrative services to

28   CNO's insurance company affiliates, including Bankers Life and Casualty

---
1
**DECLARATION OF DAVID RIKKERS IN SUPPORT OF NOTICE OF REMOVAL BY DEFENDANT CNO SERVICES, LLC**

Company, Washington National Insurance Company, and Colonial Penn Life Insurance Company.

3.      Affiant has reviewed the "Verified Complaint" filed in this matter. In it, Plaintiff alleges that his father, Robertson Kimondo, purchased an Annuity with an initial payment of $50,000 on June 21, 2006, that Plaintiff John Njoroge was designated as beneficiary and that the Annuity matured, or became payable upon Mr. Kimondo's death on May 17, 2008.

4.      Plaintiff provides a policy number of ▮▮2370 for the Annuity in paragraph 16 of the Complaint. Such a Policy was in fact issued by "Conseco Insurance Company" on or about that date, and "Conseco Insurance Company" is now known as Washington National Insurance Company, which is an Indiana corporation with its principal place of business in Carmel, Indiana. A true and accurate copy of Annuity ▮▮2370 is attached hereto as Exhibit "A" (the "Policy"). Services is not the issuer of the Policy.

5.      The Policy differs in several material respects from the description of it in the Verified Complaint. Plaintiff was never the beneficiary of the Policy; he was the Owner and Annuitant. Mr. Kimondo was the beneficiary. The Policy did not mature on Mr. Kimondo's death; it would have matured in the event of Plaintiff's death. Mr. Kimondo took out the Policy with Plaintiff as Owner and Annuitant using Plaintiff's Power of Attorney and Mr. Kimondo named himself beneficiary. After Mr. Kimondo's death, Plaintiff's sister apparently obtained Plaintiff's power of attorney and proceeded to withdraw the entire value of the Policy until she made a final withdrawal in October, 2010, resulting in surrender and termination of the Policy.

6.      The purpose of this Affidavit is to state the hypothetical value of the Policy as of the date this matter is being removed to federal court. The following computations are hypothetical only and do not reflect reality but rather assume that the allegations in the Verified Complaint about the Policy are true. It is true

that the Policy was established with an initial cash deposit of $50,000 as of on or about June 21, 2006. The Policy also provides for a guaranteed rate of return while the owner or annuitant is still alive and even after the death of the owner and/or annuitant until payment of the Policy proceeds. Assuming (without admitting) under the terms of the Policy a $50,000 deposit on June 21, 2006, and that Mr. Kimondo was the Owner and Annuitant, and then passed away on May 17, 2008, and that the proceeds had not yet been paid out, the current (as of February 19, 2020) value of the Policy would hypothetically be $63,864.55. This is based on minimum returns guaranteed under the terms of the Policy. As stated above, the actual value of the Policy is zero, as it was entirely paid out and surrendered by late October, 2010.

7.     Further Affiant sayeth naught.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

Executed on February 2/ , 2020.

_____
David Rikkers

STATE OF INDIANA        )
                        ) SS:
COUNTY OF HAMILTON       )

Before me, a Notary Public in and for said County and State, appeared David Rikkers this 21st day of February, 2020, and who, being duly sworn upon his oath acknowledged the signature on the above and foregoing Declaration as his free and voluntary act and that the statements therein are true to the best of his knowledge.

STEPHANIE LYNN MORRIS
Notary Public
Hendricks County, State of Indiana
Commission Expires March 20, 2021
Commission Number: 643061

Notary Signature _____

Stephanie L. Morris
Notary Printed Name
My County of Residence: Hendricks
My Commission Expires: March 20, 2021

3

# EXHIBIT A

# WASHINGTON NATIONAL INSURANCE COMPANY

Home Office:  11825 N. Pennsylvania St., Carmel, Indiana 46032-4555
1-800-888-4918

We will pay the benefits of this contract, subject to all of its provisions, terms and conditions.  We issue this contract based on the attached Application and payment of the Initial Premium on or before the Contract Date.

### 20 DAY RIGHT TO EXAMINE CONTRACT

YOU MAY RETURN THIS CONTRACT TO YOUR AGENT OR OUR ADMINISTRATIVE OFFICE FOR UP TO 20 DAYS AFTER YOU RECEIVE IT.  WITHIN 20 DAYS OF RECEIPT OF THIS CONTRACT WE WILL REFUND THE INITIAL PREMIUM PAID LESS ANY PARTIAL SURRENDERS OR WITHDRAWALS. THIS CONTRACT WILL THEN BE VOID.

**IMPORTANT:  FOR PERSONS WHO ARE 60 YEARS OF AGE OR OLDER.**

**YOU HAVE PURCHASED A LIFE INSURANCE POLICY OR ANNUITY CONTRACT. CAREFULLY REVIEW IT FOR LIMITATIONS.**

**THIS CONTRACT MAY BE RETURNED WITHIN 30 DAYS FROM THE DATE YOU RECEIVED IT FOR A FULL REFUND BY RETURNING IT TO THE INSURANCE COMPANY OR AGENT WHO SOLD YOU THIS CONTRACT.  AFTER 30 DAYS, CANCELLATION MAY RESULT IN A SUBSTANTIAL PENALTY KNOWN AS A SURRENDER CHARGE.  THE SURRENDER CHARGES ARE LOCATED ON THE CONTRACT SPECIFICATIONS PAGE.**

Signed for the Company, on the Contract Date.

_Karl W Kindig_                          _Steve Stauter_

Secretary                                        President

Flexible Premium Indexed Deferred Fixed Annuity Contract
Death Benefit Prior to Maturity
Monthly Income at Maturity
No Dividends
Non-Participating
This contract does not participate directly in any Stock Market or Equity Index.
This is a legal contract between You and Us.

### READ YOUR CONTRACT CAREFULLY

CIC-4006(Rev)-CA

# TABLE OF CONTENTS

Contract Specifications ........................................................................................................ 3

Definitions ............................................................................................................................. 4

General Provisions ............................................................................................................... 6

Premium Provisions ............................................................................................................ 7

Values Provisions ................................................................................................................ 7

Credit Options Provisions ................................................................................................ 10

Pay-Out Provision ............................................................................................................. 11

Withdrawals and Surrender Pay-Out Provisions ......................................................... 11

Death Pay-Out Provisions ................................................................................................ 13

Annuity Pay-Out Provisions ............................................................................................ 15

Settlement Options ............................................................................................................. 16

Table of Income for Specified Period Factors ............................................................... 18

Table of Monthly Income for Life with Guaranteed Periods ..................................... 19

Table of Joint and Survivor Income Factors ................................................................. 21

Table of Guaranteed Values ............................................................................................. 22

[CIC-4006 is not sponsored, endorsed, sold or promoted by Dow Jones. Dow Jones makes no representation or warranty, express or implied, to the owners of CIC-4006 or any member of the public regarding the advisability of investing in securities generally or in CIC-4006 particularly. Dow Jones' only relationship to the Licensee is the licensing of certain trademarks, trade names and service marks of Dow Jones and of Dow Jones Industrial Average$^{SM}$, which is determined, composed and calculated by Dow Jones without regard to Washington National Insurance Company or CIC-4006. Dow Jones has no obligation to take the needs of Washington National Insurance Company or the owners of CIC-4006 into consideration in determining, composing or calculating the Dow Jones Industrial Average$^{SM}$. Dow Jones is not responsible for and has not participated in the determination of the timing of, prices at, or quantities of CIC-4006 to be issued or in the determination or calculation of the equation by which CIC-4006 is to be converted into cash. Dow Jones has no obligation or liability in connection with the administration, marketing or trading of CIC-4006.]

[DOW JONES DOES NOT GUARANTEE THE ACCURACY AND/OR THE COMPLETENESS OF THE DOW JONES INDUSTRIAL AVERAGE$^{SM}$ OR ANY DATA INCLUDED THEREIN AND DOW JONES SHALL HAVE NO LIABILITY FOR ANY ERRORS, OMISSIONS, OR INTERRUPTIONS THEREIN. DOW JONES MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO RESULTS TO BE OBTAINED BY WASHINGTON NATIONAL INSURANCE COMPANY, OWNERS OF CIC-4006 OR ANY OTHER PERSON OR ENTITY FROM THE USE OF THE DOW JONES INDUSTRIAL AVERAGE$^{SM}$ OR ANY DATA INCLUDED THEREIN. DOW JONES MAKES NO EXPRESS OR IMPLIED WARRANTIES, AND EXPRESSLY DISCLAIMS ALL WARRANTIES, OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR USE WITH RESPECT TO THE DOW JONES INDUSTRIAL AVERAGE$^{SM}$ OR ANY DATA INCLUDED THEREIN. WITHOUT LIMITING ANY OF THE FOREGOING, IN NO EVENT SHALL DOW JONES HAVE ANY LIABILITY FOR ANY LOST PROFITS OR INDIRECT, PUNITIVE, SPECIAL OR CONSEQUENTIAL DAMAGES OR LOSSES, EVEN IF NOTIFIED OF THE POSSIBILITY THEREOF. THERE ARE NO THIRD PARTY BENEFICIARIES OF ANY AGREEMENTS OR ARRANGEMENTS BETWEEN DOW JONES AND WASHINGTON NATIONAL INSURANCE COMPANY.]

["Standard & Poor's 500$^{®}$" and "Standard & Poor's MidCap 400" are trademarks of The McGraw-Hill Companies, Inc. and have been licensed for use by Washington National Insurance Company. This Product is not sponsored, endorsed, sold, or promoted by Standard & Poor's and Standard & Poor's makes no representation regarding the advisability of purchasing this Product.]

[This contract is not promoted, sponsored or endorsed by, nor in any way affiliated with Frank Russell Company. Frank Russell Company is not responsible for and has not reviewed this contract nor any associated literature or publications and Frank Russell Company makes no representation or warranty, express or implied, as to their accuracy, or completeness, or otherwise.]

## CONTRACT SPECIFICATIONS

Contract Number: ████2370

Issue State:  CA

Contract Owner:  JOHN NJOROGE

Joint Owner:

Annuitant:  JOHN NJOROGE

Joint Annuitant:

Annuitant's Issue Age:  40

Annuitant's Sex:  MALE

Contract Date:  JUNE 21, 2006

Maturity Date:  JUNE 21, 2061

Initial Premium:  $50,000.00

Planned Premium Amount:  $50.00

---

Minimum Guaranteed Interest Rate:          3.00%  on 87.5% of First Year and
                                           Renewal Premiums

Minimum Guaranteed Participation Rate: 10%

Minimum Guaranteed Index Cap:
        Annual:                            3%
        Monthly:                           1%

Minimum Initial Premium Limits:            $2,000 Qualified
                                           $5,000 Non-Qualified
                                           $250 Electronic Funds Transfer
                                             (Monthly, Non-Qualified Only)
                                           $50 TSA or Employer Sponsored Plan
                                             (Monthly Only)

Maximum Total Premium Limit:               $2,000,000
                                           Amounts in excess will be subject to
                                           prior Company approval.

Premium Bonus:                             5%

Premium Bonus Vesting Schedule:

| Contract Year: | 1 | 2 | 3 | 4 | 5 | 6 |
|---|---|---|---|---|---|---|
| Percent of Premium Bonus vested: | 0% | 20% | 40% | 60% | 80% | 100% |

| Contract Year: | 7 | 8 | 9 | 10 | 11 | 12 |
|---|---|---|---|---|---|---|
| Percent of Premium Bonus vested: | 100% | 100% | 100% | 100% | 100% | 100% |

Surrender Charge Percentage:

| Contract Year | Percentage | Contract Year | Percentage |
|---|---|---|---|
| 0-1 | 12.00% | 8 | 9.00% |
| 2 | 12.00% | 9 | 8.00% |
| 3 | 12.00% | 10 | 6.00% |
| 4 | 12.00% | 11 | 4.00% |
| 5 | 12.00% | 12 | 2.00% |
| 6 | 11.00% | 13+ | 0.00 |
| 7 | 10.00% | | |

CIC-4006-CA                                3                                0-70

## CONTRACT SPECIFICATIONS (continued)

FIXED CREDIT OPTION

Credit Option:   10%   A - Fixed Account
                       Guaranteed First Year Base Interest Rate
                       on Initial Premium   4.25%
                       Guaranteed First Year Bonus Interest Rate
                       on Initial Premium   0.00%
                       Total Guaranteed First Year Interest Rate
                       on Initial Premium   4.25%

MONTHLY AVERAGING CREDIT OPTIONS

          10%   B - Standard & Poor's 500® Index Account
                Initial Index Value   1240
                Guaranteed First Year Participation Rate 100.00%,
                including   20.00% First Year Bonus Participation Rate
                Guaranteed First Year Annual Index Cap   Currently N/A ,
                including Currently N/A  First Year Bonus Annual Index Cap
          10%   C - Standard & Poor's MidCap 400 Index Account
                Initial Index Value   725
                Guaranteed First Year Participation Rate 100.00%,
                including   30.00% First Year Bonus Participation Rate
                Guaranteed First Year Annual Index Cap   Currently N/A ,
                including Currently N/A  First Year Bonus Annual Index Cap
          10%   D - Russell 2000® Index Account
                Initial Index Value   677
                Guaranteed First Year Participation Rate 100.00%,
                including   40.00% First Year Bonus Participation Rate
                Guaranteed First Year Annual Index Cap   Currently N/A ,
                including Currently N/A  First Year Bonus Annual Index Cap
          10%   E - Dow Jones Industrial Average℠ Index Account
                Initial Index Value   10974
                Guaranteed First Year Participation Rate 100.00%,
                including   20.00% First Year Bonus Participation Rate
                Guaranteed First Year Annual Index Cap   Currently N/A ,
                including Currently N/A  First Year Bonus Annual Index Cap

CIC-4006                                3A

## CONTRACT SPECIFICATIONS (Continued)

ANNUAL POINT-TO-POINT CREDIT OPTIONS

10%  F - Standard & Poor's 500® Index Account
Initial Index Value    1240
Guaranteed First Year Annual Index Cap      9.25%,
including    .75% First Year Bonus Annual Index Cap
Guaranteed First Year Participation Rate 100.00%,
including    0.00% First Year Bonus Participation Rate

10%  G - Standard & Poor's MidCap 400 Index Account
Initial Index Value    725
Guaranteed First Year Annual Index Cap      9.25%,
including    .75% First Year Bonus Annual Index Cap
Guaranteed First Year Participation Rate 100.00%,
including    0.00% First Year Bonus Participation Rate

10%  H - Russell 2000® Index Account
Initial Index Value    677
Guaranteed First Year Annual Index Cap      9.25%,
including    .75% First Year Bonus Annual Index Cap
Guaranteed First Year Participation Rate 100.00%,
including    0.00% First Year Bonus Participation Rate

10%  I - Dow Jones Industrial Average$^{SM}$ Index Account
Initial Index Value    10974
Guaranteed First Year Annual Index Cap      9.25%,
including    .75% First Year Bonus Annual Index Cap
Guaranteed First Year Participation Rate 100.00%,
including    0.00% First Year Bonus Participation Rate

## CONTRACT SPECIFICATIONS (continued)

MONTHLY POINT-TO-POINT CREDIT OPTION
10%   J - Standard & Poor's 500® Index Account
      Initial Index Value    1240
      Guaranteed First Year Monthly Index Cap      3.00%,
      including    .50% First Year Bonus Monthly Index Cap
      Guaranteed First Year Participation Rate 100.00%,
      including   0.00% First Year Bonus Participation Rate

CIC-4006                                    3C

# DEFINITIONS

| | |
|---|---|
| Account Value: | A separate Account Value will be calculated for each Credit Option. The Account Value for each specific Credit Option equals the Premium allocated to that specific Credit Option plus amounts credited to that specific Credit Option, less any withdrawals and any applicable surrender charges from that specific Credit Option. |
| Age: | The Annuitant's Age last birthday. |
| Annual Index Cap: | The maximum annual Index increase that may be applied to the Account Value in Credit Options B, C, D, E, F, G, H and I. |
| Annuitant: | The natural person(s) on whose life the annuity benefit for this contract will be based. The Annuitant (and Joint Annuitant, where applicable) may or may not be the Owner. |
| Application: | The form You filled out to apply for this contract. We have attached a copy. |
| Beneficiary: | The person or persons shown on the Application or by later changes, to whom We will pay death Proceeds. You may change a Beneficiary as this contract allows. |
| Cash Surrender Value: | The greater of Your Total Account Value, less surrender charges, or Your Minimum Guaranteed Contract Value. |
| Contract Anniversary Date: | The date one year after the Contract Date and the same day of each year thereafter. |
| Contract Date, Issue Date: | The date this contract becomes effective. This contract does not take effect until You have paid the Initial Premium. |
| Contract Value: | The greater of the Total Account Value or the Minimum Guaranteed Contract Value. |
| Contract Year: | A twelve (12) month period beginning on the issue date and ending one day prior to the issue date in the succeeding twelve (12) month period. |
| Credit Options: | Contract allocation options by which amounts credited to the contract are determined. |
| Index: | The Index(es) are shown on the contract specifications page. If the publication of an Index is discontinued, is changed substantially, or is no longer available to Us, We may delete an Index or substitute a suitable Index and Notify You. |
| Index Credit: | The amount credited to the contract under Credit Option B, C, D, E, F, G, H, I and/or J, which is based on the performance of the Index(es). |

CIC-4006(Rev)                                                              4

## DEFINITIONS (continued)

| | |
|---|---|
| Index Date: | For Options B, C, D, E and J, it is the last day of each monthly period beginning on the Contract Date and the same day of each month thereafter. If the same day does not exist in a month, such as the 31st, We use the first preceding day. For example: If a Contract Date is March 31, 2005 the first Index Date for that Contract is April 30, 2005. For options F, G, H and I, it is the last day prior to the Contract Anniversary Date. |
| Initial Premium: | The Premium that we receive that is applied on the Contract Date/Issue Date, as shown on the contract specifications page. |
| Interest Credit: | The amount credited to the contract under Credit Option A. The interest rate, which is guaranteed for the First Year on Initial Premium, is shown on the contract specifications page. |
| Maturity Date: | The date shown on the contract specifications page on which annuity payments will begin. It is the first Contract Anniversary Date after the Annuitant's 95th birthday. It is set on the Contract Date and may not be changed. |
| Minimum Guaranteed Contract Value: | On any date, it is 87.5% of the first year Premiums and 87.5% of Premiums received thereafter, less withdrawals, accumulated at the minimum guaranteed interest rate as specified on the contract specifications page. |
| Monthly Index Cap: | The maximum monthly Index increase that may be applied to the Account Value in Credit Option J. |
| Notice, Notify, Notifying: | Written requests and information We receive at Our office, that You sign, and We accept. |
| Owner, Joint Owner, You, Your: | The person(s) named in the Application as the Owner of this contract. The Owner has all rights and responsibilities under this contract. |
| Participation Rate: | The percentage of the increase in the underlying Index that may be applied to a Credit Option. |
| Payee: | The person to whom We pay Proceeds. |
| Premium: | Consideration(s) paid into this contract by or on behalf of the Owner. |
| Proceeds: | The amount payable under this contract at Maturity, death of Annuitant or Owner, or upon surrender. |
| Surrender Charge Period: | The period of time that We may apply a surrender charge to Your Contract Value. See Your contract specifications page for the number of years Your contract has surrender charges. |
| Total Account Value: | The sum of all Account Values. |
| We, Our, Us, Company: | Washington National Insurance Company. |

## GENERAL PROVISIONS

CHANGES IN THE LAW

We may amend this contract to comply with any changes in laws governing it or taxation of benefits under it.  Any change is subject to contract provisions.

CONFORMITY WITH THE LAW

The provisions of this contract conform to the minimum requirements of the issue state.  The laws of the issue state control over any conflicting laws of any other state where the Owner may live on or after the Contract Date.  Any provision which, at issue, is in conflict with the laws of such state is intended to conform to the minimum requirements of such laws.

CONTRACT CHANGES

No one may change any part of this contract or waive any provision except You and one of Our officers. Both must agree to the change.  All changes must be in writing.

ENTIRE CONTRACT

This contract, attached Application, and any amendments, riders or endorsements make up the entire contract.

INCONTESTABILITY

In the absence of fraud, We will not contest this contract after it has been in force during the Annuitant's lifetime for two (2) years from the Issue Date.  Read the Application copy attached.  If anything is not true or complete to the best of Your knowledge and belief, Notify Us.

NONFORFEITABILITY

Before the Maturity Date, Your interest in the Cash Surrender Value will always be nonforfeitable.

OWNERSHIP

This contract belongs to You.  You have all rights and responsibilities, subject to the rights of:

> (1)  Any assignee on record with Us;
>
> (2)  Any irrevocable Beneficiary; and
>
> (3)  Any restricted ownership.

You may change the Owner by Notifying Us.  The change will take effect on the date We receive Notice. Any change is subject to any action We take before receiving Notice.  A change of Owner does not change the Beneficiary.

PREMIUM TAX/TAX

If We are required to pay state Premium taxes, We will recalculate Your values at pay-out as if We had deducted state Premium taxes from each Premium when such Premium was paid.  The Company will deduct any other taxes payable to a state or other governmental entity as required.

PROOF OF AGE, SEX OR SURVIVAL

The Company may require satisfactory proof of correct age or sex, if applicable, at any time.  If any payment under this contract is contingent on the Annuitant, Owner, or Beneficiary being alive, We may require satisfactory proof of survival.

## GENERAL PROVISIONS (continued)

PROTECTION OF PROCEEDS

To the extent permitted by law, death benefits and income payments shall be free from legal process and the claim of any creditor of the person entitled to them under the contract. No amount under the contract can be assigned in advance of its payment date unless the Company receives the Owner's consent.

STATEMENTS OR REPORTS

The Company shall provide You with an annual statement of Account Values and any other reports as may be required by law.

## PREMIUM PROVISIONS

PAYMENT OF PREMIUMS

The Initial Premium, shown on the contract specifications page, is due on the Contract Date. You may make additional Premium payments in any amount and frequency, subject to the limitations below.

LIMITATIONS

You may pay additional Premiums if:

(1) The contract is in force;

(2) The Annuitant is alive;

(3) The additional Premium is at least ($50) fifty dollars; and

(4) The additional Premium meets the maximum premium requirements under this contract as shown on the contract specification page.

PREMIUM BONUS

The Premium Bonus is equal to any Premium received in the first Contract Year, multiplied by the corresponding Premium Bonus percentage shown on the contract specifications page. The Premium Bonus will be credited to Your Account Values on the date the Premium is applied to Your contract. The Premium Bonus will be applied to Your Cash Surrender Value according to the Premium Bonus Vesting Schedule shown on the contract specifications page.

## VALUES PROVISIONS

CONTRACT VALUE

The Contract Value equals the greater of:

(1) Total Account Value; or

(2) Minimum Guaranteed Contract Value.

TOTAL ACCOUNT VALUE

The Total Account Value equals the sum of all Account Values.

ACCOUNT VALUES

We calculate an Account Value for each Credit Option individually as follows:

(1) On Your Contract Date:

(a) The Initial Premium allocated to the specific Credit Option; plus

(b) Any applicable Premium Bonus allocated to the specific Credit Option.

CIC-4006(Rev)                    7

## VALUES PROVISIONS (continued)

(2) On each Contract Anniversary Date:
  (a) Your Account Value for the specific Credit Option on the preceding Contract Anniversary Date; plus
  (b) Any Premiums paid since the preceding Contract Anniversary Date and any interest earned on such Premiums which are allocated to the specific Credit Option; plus
  (c) Any Premium Bonus credited since the preceding Contract Anniversary Date allocated to the specific Credit Option; less
  (d) Any withdrawals and surrender charges from the specific Credit Option, as applicable; plus
  (e) Any Index Credit or Interest Credit, to the specific Credit Option, as applicable.

(3) Between Contract Anniversary Dates:
  (a) Your Account Value for the specific Credit Option on the preceding Contract Anniversary Date; plus
  (b) Any Premiums paid since the preceding Contract Anniversary Date; if calculating for Credit Option A; plus
  (c) Any Premium Bonus credited since the preceding Contract Anniversary Date, if calculating for Credit Option A; less
  (d) Any withdrawals and surrender charges from the specific Credit Option, as applicable; plus
  (e) Any Interest Credit if calculating for Credit Option A.

### MINIMUM GUARANTEED CONTRACT VALUE

The Minimum Guaranteed Contract Value on any date equals:

(1) 87.5% of First Year Premiums We receive; plus
(2) 87.5% of Premiums received after the first year; less
(3) Any withdrawals;
(4) All accumulated at the minimum guaranteed interest rate shown on the contract specifications page.

The minimum guaranteed interest rate is shown on the contract specifications page. It is guaranteed until this contract terminates, and is calculated as an effective annual rate, compounded daily.

### CASH SURRENDER VALUE

The Cash Surrender Value is the amount available when You surrender this contract by Notifying Us. It is equal to the greater of Your Total Account Value less any applicable surrender charges, or Your Minimum Guaranteed Contract Value. At surrender, We reduce Your Cash Surrender Value by any applicable premium tax, as described in the Premium Tax section.

### SURRENDER CHARGE

We calculate surrender charges as follows:

(1) At any partial withdrawal, the surrender charge equals the amount withdrawn, less any unvested Premium Bonus withdrawn, less any available Free Partial Withdrawal, multiplied by the surrender charge percentage shown on the contract specifications page, plus any unvested Premium Bonus withdrawn. The surrender charge will be deducted from the amount withdrawn to determine the amount payable to You; or
(2) At surrender, Your Total Account Value, less any unvested Premium Bonus, multiplied by the surrender charge percentage shown on the contract specifications page, plus any unvested Premium Bonus.

Index credits may not be fully realized due to surrender charges, as applicable to early withdrawals.

## VALUES PROVISIONS (continued)

INDEX VALUE

The index value on any specified date is the closing value associated with the Index shown on the contract specifications page. If the index value is not available for any Index Date, We will use the index value on the first day for which the index value is available, prior to the Index Date. If publication of an index is discontinued, the calculation is substantially changed, or is no longer available to Us, We may delete an Index or substitute a suitable alternative Index and Notify You.

INDEX AVERAGE

The index average is the average of the closing index prices on the twelve (12) Index Dates during each Contract Year for Credit Options B, C, D and E.

Index Average Example:

If the Contract Date is January 13, and the Index Dates and indexes are as follows:

| Index Date | Index Value | Index Date | Index Value |
|------------|-------------|------------|-------------|
| 2/12 | 500 | 8/12 | 600 |
| 3/12 | 520 | 9/12 | 580 |
| 4/12 | 540 | 10/12 | 560 |
| 5/12 | 560 | 11/12 | 540 |
| 6/12 | 580 | 12/12 | 520 |
| 7/12 | 600 | 1/12 | 500 |

Then the sum of the indexes equals 6,600

and the index average equals 550 (6,600 divided by 12)

ANNUAL POINT-TO-POINT

Annual point-to-point is the method of calculating the Index Credit for Credit Options F, G, H and I. The annual point-to-point calculation measures the percentage excess of the end-of-year index price over the beginning-of-year index price. Year refers to Contract Year.

MONTHLY POINT-TO-POINT

Monthly point-to-point is the method of calculating the Index Credit for Credit Option J. The monthly point-to-point calculation measures the monthly return (gain or decline) in the index by comparing the index value each month with the index value from the previous month, subject to the Monthly Index Cap. At the end of the year, the 12 monthly returns are totaled and then multiplied by the Participation Rate to determine the annual Index Credit. Year refers to Contract Year.

PARTICIPATION RATE

The Participation Rate is the percentage of the increase in the underlying Index that may be applied to a Credit Option. The Participation Rate is used in the calculation of the Index Credit under Options B, C, D, E, F, G, H, I and J. The Participation Rates as shown on the contract specifications page are guaranteed for the first Contract Year for the Premiums received on the Contract Date. After the first Contract Year, a new Participation Rate will be declared each Contract Year and is guaranteed for that Contract Year. The Participation Rate is guaranteed to not be less than the Minimum Guaranteed Participation Rate as shown on the contract specifications page.

## VALUES PROVISIONS (continued)

INDEX CAP

The Index Cap for Credit Options B, C, D, E, F, G, H and I is the maximum Index increase that may be applied to one of those Credit Options. The Index Cap for Credit Option J is the maximum monthly Index return that may be applied to that Credit Option. The Index Caps as shown on the contract specifications page are guaranteed for the first Contract Year for the Premiums received on the Contract Date. After the first Contract Year, a new Index Cap will be declared each Contract Year and is guaranteed for that Contract Year. The Index Caps are guaranteed not to be less than the Minimum Guaranteed Index Cap as shown on the contract specifications page.

INTEREST RATES

Credit Option A receives an Interest Credit based on a fixed interest rate declared in advance by the Company. The interest rate as shown on the contract specifications page is guaranteed for the first Contract Year for the Premiums received on the Contract Date.

RESERVE BASIS

The reserve method and basis for this contract is on file with the Insurance Department in the state of issue.

## CREDIT OPTIONS PROVISIONS

CREDIT OPTIONS

The following is a description of the Credit Options available in this contract. Each one is independent of the others.

1) Option A: This Account Value receives credit, defined as Interest Credit, based on a fixed interest rate declared in advance by the Company.

2) Options B, C, D, E, F, G, H, I and J: Each Account Value receives credit, defined as Index Credit, based on gains in the specific Index as shown on the contract specifications page. The Index Credit will never be less than zero (0) or greater than the Index Cap.

An Index Credit for each Credit Option is calculated independently and is added to the Account Value for that specific Credit Option on the last day of each Contract Year.

For Credit Options B, C, D, and E, the Index Credit equals:

    (a) The index average for the specific Credit Option for the current Contract Year, minus the index value on the preceding Contract Anniversary Date; divided by

    (b) The index value on the preceding Contract Anniversary Date;

    (c) Result not to exceed the Annual Index Cap for the specific Credit Option; multiplied by

    (d) The Participation Rate for the specific Credit Option; multiplied by

    (e) The Account Value for the specific Credit Option on the preceding Contract Anniversary Date less any withdrawals and applicable surrender charges taken from the specific Credit Option during the preceding Contract Year.

For Credit Options F, G, H and I, the Index Credit equals:

    (a) The index value for the specific Credit Option on the last day of the current Contract Year, minus the index value on the preceding Contract Anniversary; divided by

    (b) The index value on the preceding Contract Anniversary Date;

## CREDIT OPTIONS PROVISIONS (continued)

    (c)  Result not to exceed the Annual Index Cap for the specific Credit Option; multiplied by

    (d)  The Participation Rate for the specific Credit Option, multiplied by

    (e)  The Account Value for the specific Credit Option on the preceding Contract Anniversary Date less any withdrawals and applicable surrender charges taken from the specific Credit Option during the preceding Contract Year.

For Credit Option J, the Index Credit equals:

    (a)  The sum of the monthly returns from the preceding Contract Year.

    (b)  Monthly returns not to exceed the Monthly Index Cap; multiplied by

    (c)  The Participation Rate for the specific Credit Option; multiplied by

    (d)  The Account Value for the specific Credit Option on the preceding Contract Anniversary Date less any withdrawals and applicable surrender charges taken from the specific Credit Option during the preceding Contract Year.

CREDIT OPTION ALLOCATION AND TRANSFERS

You have chosen the Credit Option allocation as shown on the contract specifications page. Any Premiums received after the Initial Premium and between Contract Anniversary Dates will be allocated to Credit Option A. The Premium, plus any applicable Premium Bonus and/or any interest credited, will be transferred according to Your Credit Option allocation on the next Contract Anniversary Date.

You have the right to change the Credit Option allocation at any time. Any change in the Credit Option allocation is for new Premiums only. Election or change of a Credit Option allocation must be made by written Notice to Us. Such written Notice must be received in Our administrative offices at least thirty (30) days prior to Your Contract Anniversary Date. Any election or change is effective on Your Contract Anniversary Date. If no election is made for a Contract Year, the Credit Option allocation currently in effect will continue in effect for the next Contract Year.

You may transfer Your Account Value between Credit Options on each Contract Anniversary Date. Notification of any transfer must be made thirty (30) days prior to the Contract Anniversary Date.

## PAY-OUT PROVISION

MINIMUM BENEFITS

Any annuity, cash surrender, or death benefit pay-outs available under this contract are at least the minimum required by laws of the state where We deliver this contract. If We do not apply the Proceeds to provide a periodic income, We will pay them out as a single sum.

## WITHDRAWAL & SURRENDER PAY-OUT PROVISIONS

WITHDRAWALS

Withdrawals are any amounts, less than the Cash Surrender Value, paid to You at Your request. We calculate surrender charges as described in the value provision, and adjust Your values as described under the values provisions. Some limitations may apply as shown in the Limitations section below.

## **WITHDRAWAL & SURRENDER PAY-OUT PROVISIONS (continued)**

FREE PARTIAL WITHDRAWAL

Each Contract Year, after the first, You may take one free partial withdrawal of up to 10% of Your Premiums free of surrender charges. Some limitations may apply as shown in the Limitations section below. We will apply applicable surrender charges to:

    (1) Amounts withdrawn in excess of 10% of Your Premiums;

    (2) Any nonsystematic withdrawals taken after the first free partial withdrawal taken in any Contract Year; and

    (3) Any nonsystematic withdrawals taken in the first Contract Year.

Not withstanding the foregoing, under the Required Minimum Distribution rules applicable to retirement plans and imposed by the Internal Revenue Code of 1986, as amended, You may take the annual amount required to be distributed under those rules from this contract, if applicable to this contract, without incurring a surrender charge.

SYSTEMATIC WITHDRAWALS

Beginning in the first Contract Year, You may request the systematic withdrawal of the interest credited to Credit Option A. This withdrawal of interest up to the 10% free partial withdrawal amount will not incur surrender charges. Upon written Notice to Us, We will pay Your interest to You in one of the following modes; monthly, quarterly, semiannually or annually, based on the Contract Anniversary Date. The minimum modal amount payable is $50.00. If this minimum amount is not available for any given period, the next systematic withdrawal will include the previous period's interest plus the interest amount for the current mode. Systematic withdrawals may continue until We receive Notice from You to discontinue withdrawals.

After the first Contract Year, You may begin the systematic withdrawal of a stated fixed payment amount. Upon written Notice to Us, We will pay the designated amount to You. Systematic withdrawals may continue until We receive Notice from You to discontinue withdrawals.

SURRENDER

You may surrender this contract at any time prior to the Maturity Date by Notifying Us. We will pay You the Cash Surrender Value. At surrender, You may choose a lump sum payment or one of the Settlement Options offered in this contract, or by Us at the time of surrender. We may reduce the Cash Surrender Value by any applicable premium tax as described in the Premium Tax section. Some limitations may apply as shown in the Limitations section below.

LIMITATIONS

You may take up to two withdrawals per Contract Year, beginning after the first Contract Year. Systematic withdrawals are considered as one withdrawal. The minimum amount of any payment is $50.00. Any systematic withdrawal, partial withdrawal, or combination thereof, that exceeds the free partial withdrawal amount of 10% of Your Premiums will be assessed applicable surrender charges. You may not take a withdrawal unless Your Contract Value, after the withdrawal, is at least equal to the minimum premium limits as shown on the contract specifications page for a qualified or nonqualified contract. The entire amount of a surrender is subject to the surrender charge; there is no free partial withdrawal upon surrender. We treat any free partial withdrawal You take within the twelve (12) months before surrender as having been made in anticipation of surrender. We will apply a surrender charge on the amount previously withdrawn at surrender. We may defer payment of any surrender or withdrawal amount for up to six (6) months from the date You Notify Us if the Company receives written approval from the Insurance Commissioner in Your state. If We defer any payment, We will pay You interest at the rate required by the laws of the issue state.

# DEATH PAY-OUT PROVISIONS

ANNUITANT'S DEATH

At death of the Annuitant, the death benefit under this contract equals the Contract Value on the date of death. If the Annuitant dies before the Maturity Date, We will pay the death benefit to the Beneficiary. If You did not choose a settlement option, the Beneficiary may make a selection within sixty (60) days of Our receiving proof of death. If no selection is made by the Beneficiary within 60 days of Our receiving proof of death We will make a single sum payment to the Beneficiary. If there are Joint Annuitants We pay the death benefit at the death of the second Annuitant. We may reduce the death benefit by any applicable premium tax as described in the Premium Tax section. If the Annuitant and the Owner are the same, see the Owner's Death provisions, next.

If the Annuitant dies while Proceeds are being paid under a settlement option, We will pay the Beneficiary any remaining balance as provided for in the settlement option selected, at least as rapidly as under the method of payment in effect at the Annuitant's death.

OWNER'S DEATH

At death of the Owner who is also the Annuitant, the death benefit equals the Contract Value on the date of death. At the death of the Owner who is not the Annuitant, the death benefit equals the Cash Surrender Value on the date of death. If the Owner dies before the Maturity Date, We will pay the death benefit to the Beneficiary. We will pay out the entire death benefit in a lump sum to the Beneficiary as of the date of death unless:

(1) It is payable to the Beneficiary over a five (5) year period. The entire Proceeds must be paid within five (5) years;

(2) It is payable over the lifetime, or life expectancy, of a designated Beneficiary. Payment must begin within one year of the date of death; or

(3) The designated Beneficiary is the Owner's spouse and he or she continues the contract in his or her name as new Owner. In this case, any previous Primary Beneficiary designation terminates with the death of the original Owner. Any previous contingent Beneficiary designation will become the Primary Beneficiary until a new Beneficiary is designated.

If there are Joint Owners, We apply these distribution requirements upon the death of the first Owner. Upon the death of a Joint Owner, the surviving Joint Owner will become the Beneficiary, regardless of any other designation contained in the Application or otherwise noted.

If the Owner dies while Proceeds are being paid under a settlement option, We will pay the Beneficiary any remaining balance as provided for in the settlement option selected, at least as rapidly under the method of payment in effect at the Owner's death.

If the contract is owned by a non-natural person, the death of the Annuitant will be treated as the death of the Owner. If the death benefit is paid in this instance, the death benefit will be paid in a lump sum or over a five (5) year period.

We may reduce the death benefit by any applicable premium tax as described in the Premium Tax section.

## DEATH PAY-OUT PROVISIONS (continued)

INTEREST ON THE DEATH BENEFIT

We will pay interest on the death benefit from the date of death until:

    (1) The date of payment; or

    (2) The date the death benefit is applied to a settlement option.

The interest applied to the death benefit will be the greater of:

    (1) The current rate of interest We declare; or

    (2) Any minimum rate required in the state of issue.

BENEFICIARY

You named the Beneficiary on the Application. While the Annuitant is alive You may change the Beneficiary by Notifying Us. Any change will take effect on the date We receive Notice. Any change is subject to payment or other action We take before receiving Notice.

Unless You Notify Us otherwise, these rules apply:

    (1) If You name more than one Beneficiary, and any one Beneficiary dies before a death benefit is payable under this contract, We will pay the death benefit to any surviving Beneficiary(ies).

    (2) If any Beneficiary dies within thirty (30) days of the date on which a death benefit becomes payable under this contract and We receive Notice of the death before We pay the death benefit, We will pay it as if the Beneficiary died before the date the death benefit became payable.

    (3) If You have not named a Beneficiary, or if no named Beneficiary is alive when a death benefit becomes payable under this contract, We will pay the death benefit to the Owner, if living, or to the estate of the Owner if the Owner is not alive.

    (4) We will pay equal amounts when more than one Beneficiary is to share the death benefit.

    (5) When You do not state Beneficiaries by name (such as "children"), We may find who they are from sworn statements and not wait for court records. The word "child" means only a child born to, or adopted by, the Owner or the Annuitant, whichever person's death has triggered the payment of a death benefit under this contract; it does not mean grandchild or stepchild.

    (6) If there are Joint Owners, upon the death of a Joint Owner the surviving Joint Owner will become the Beneficiary, regardless of any other designation.

# ANNUITY PAY-OUT PROVISIONS

ANNUITY BENEFITS

We will apply Your Contract Value on the Maturity Date to provide an annuity under a settlement option of Your choice. You may choose any settlement option offered in this contract or one We currently offer by Notifying Us.

We may reduce Your Contract Value by any applicable premium tax as described in the Premium Tax section.

If payments do not begin immediately, We will credit interest to Your Contract Value until payments begin or until applied under a settlement option. We will add this interest to Your Contract Value and pay the greater of:

    (1) The current rate of interest We declare; or

    (2) Any minimum rate required in the state of issue.

We may change the mode of payment so the annuity payment is at least fifty ($50) dollars.

ADJUSTMENT OF BENEFIT VALUES

If We find an error in the stated age or sex of any Annuitant or Joint Annuitant, We will adjust the benefits to those that the values of this contract would have purchased using the correct age or sex.

If We find an error and We have made income payments, We will:

    (1) Pay the amount of any under-payments, plus interest, compounded yearly; or

    (2) Charge the amount of any over-payments, plus interest, compounded yearly, against the current or next income payments.

CIC-4006(Rev)                    15

# SETTLEMENT OPTIONS

These are the guaranteed settlement options from which You may choose. You also may choose any other settlement option We offer. All settlement options are for a minimum period of five (5) years. Except for the life income option, the maximum time over which We will make payments is twenty (20) years or to Age 100, if earlier.

OPTION 1 – INCOME FOR SPECIFIED PERIOD

We will pay an income for a specific number of years in equal installments. We guarantee these payments to be at least those shown in Table 1.

OPTION 2 – LIFE INCOME

We will pay equal monthly payments for a specified period certain and then for life. We guarantee these payments will be at least those shown in Table 2.

OPTION 3 – INCOME OF SPECIFIED AMOUNT

We will pay income of the specified amount until the principal and interest are exhausted.

OPTION 4 – JOINT AND SURVIVOR INCOME

We will pay equal monthly payments during the joint lifetime of the Annuitant and the named Beneficiary/Payee. We will determine the payment by the Age of each person from Table 3. The Annuitant must be at least fifty (50) years old, and the Beneficiary/Payee must be at least forty-five (45) years old, at the time of the first monthly payment.

AUTOMATIC SETTLEMENT OPTION

The automatic settlement option is life income with ten years certain. If You do not select a settlement option within sixty (60) days of maturity, the automatic settlement option will take effect.

INTEREST ON SETTLEMENT OPTIONS

We will pay the greater of the current rate of interest on settlement options as declared by Us, or the minimum rate required in the state of issue, on all settlement options.

EXCESS INTEREST

Excess interest is the difference between the current rate, as declared by Us, and the minimum rate required in the state of issue. We will determine excess interest, if any, on settlement option amounts.

SUPPLEMENTARY CONTRACT

When We receive a request for a settlement option, We will prepare a supplementary contract stating the terms under which We will make payments. The supplementary contract will state to whom We will pay any remaining Proceeds if the Payee dies. We will require this contract in exchange for the supplementary contract. If any payment is contingent on any Annuitant, Owner, or any Beneficiary being alive, We may require satisfactory proof of survival.

If the Payee dies before payments under the supplementary contract are complete, We will pay any remaining balance at least as rapidly as under the method of payment in effect on the Payee's date of death.

## SETTLEMENT OPTIONS (continued)

ANNUITY TABLES

For Table 2 and Table 3 on the following pages, the Payee's settlement age is the Payee's age, nearest birthday, on the date of the first payment, minus the age adjustment.  The age adjustments are shown on the table below and are based on the date of the first payment.  For each decade after 2050, add an additional year of attained age set back.

| Annuitization Year | Attained Age Set Back |
|---|---|
| 2005-2010 | 1 |
| 2011-2020 | 2 |
| 2021-2030 | 3 |
| 2031-2040 | 4 |
| 2041-2050 | 5 |

## TABLE 1

### INCOME FOR SPECIFIED PERIOD FACTORS

Installments shown are for each $1,000 of net Proceeds applied.  Interest is 1.5%, and is subject to change as described in the Interest On Settlement Options Section.

| Annual Years | Annual | Semi Annual | Quarterly | Monthly * |
|---|---|---|---|---|
| 1 | N/A | N/A | N/A | N/A |
| 2 | N/A | N/A | N/A | N/A |
| 3 | N/A | N/A | N/A | N/A |
| 4 | N/A | N/A | N/A | N/A |
| 5 | 206.00 | 103.38 | 51.79 | 17.28 |
| 6 | 172.93 | 86.79 | 43.47 | 14.51 |
| 7 | 149.32 | 74.94 | 37.54 | 12.53 |
| 8 | 131.61 | 66.05 | 33.09 | 11.04 |
| 9 | 117.84 | 59.14 | 29.63 | 9.89 |
| 10 | 106.83 | 53.61 | 26.86 | 8.96 |
| 11 | 97.83 | 49.10 | 24.59 | 8.21 |
| 12 | 90.33 | 45.33 | 22.71 | 7.58 |
| 13 | 83.98 | 42.15 | 21.11 | 7.05 |
| 14 | 78.55 | 39.42 | 19.75 | 6.59 |
| 15 | 73.84 | 37.06 | 18.56 | 6.20 |
| 16 | 69.72 | 34.99 | 17.53 | 5.85 |
| 17 | 66.09 | 33.17 | 16.61 | 5.55 |
| 18 | 62.86 | 31.55 | 15.80 | 5.27 |
| 19 | 59.98 | 30.10 | 15.08 | 5.03 |
| 20 | 57.38 | 28.80 | 14.43 | 4.81 |

* Equal monthly payment for the number of years elected, not less than 5 nor to exceed 20 years.

## TABLE 2

### MONTHLY INCOME FOR LIFE AND LIFE WITH GUARANTEED PERIODS

Equal monthly payments for life only and for guaranteed periods of 10 or 20 years as elected and for life thereafter as shown in the table below.  Amount of each monthly installment shown is per $1,000 of net Proceeds.  Amounts are based on Annuity 2000 Mortality Table and 1.5% Interest and subject to the attained age set back table in the Annuity Tables provision.

**Male**

| Settlement Age of Payee | Life Only | Life with 10 Year Certain | Life with 20 Year Certain | Settlement Age of Payee | Life Only | Life with 10 Year Certain | Life with 20 Year Certain |
|---|---|---|---|---|---|---|---|
| 25 | $2.20 | $2.20 | $2.19 | 61 | $4.27 | $4.19 | $3.86 |
| 26 | 2.22 | 2.22 | 2.22 | 62 | 4.40 | 4.30 | 3.93 |
| 27 | 2.25 | 2.25 | 2.24 | 63 | 4.54 | 4.42 | 4.00 |
| 28 | 2.27 | 2.27 | 2.27 | 64 | 4.69 | 4.55 | 4.07 |
| 29 | 2.30 | 2.30 | 2.29 | 65 | 4.85 | 4.69 | 4.14 |
| 30 | 2.33 | 2.33 | 2.32 | 66 | 5.02 | 4.83 | 4.21 |
| 31 | 2.36 | 2.36 | 2.35 | 67 | 5.20 | 4.98 | 4.27 |
| 32 | 2.39 | 2.39 | 2.38 | 68 | 5.39 | 5.13 | 4.33 |
| 33 | 2.42 | 2.42 | 2.41 | 69 | 5.60 | 5.29 | 4.39 |
| 34 | 2.46 | 2.45 | 2.44 | 70 | 5.82 | 5.45 | 4.44 |
| 35 | 2.49 | 2.49 | 2.47 | 71 | 6.05 | 5.62 | 4.49 |
| 36 | 2.53 | 2.52 | 2.51 | 72 | 6.30 | 5.79 | 4.54 |
| 37 | 2.56 | 2.56 | 2.54 | 73 | 6.57 | 5.96 | 4.58 |
| 38 | 2.60 | 2.60 | 2.58 | 74 | 6.85 | 6.14 | 4.62 |
| 39 | 2.65 | 2.64 | 2.62 | 75 | 7.15 | 6.32 | 4.65 |
| 40 | 2.69 | 2.68 | 2.66 | 76 | 7.47 | 6.51 | 4.68 |
| 41 | 2.73 | 2.73 | 2.70 | 77 | 7.82 | 6.69 | 4.71 |
| 42 | 2.78 | 2.77 | 2.74 | 78 | 8.19 | 6.87 | 4.73 |
| 43 | 2.83 | 2.82 | 2.79 | 79 | 8.59 | 7.05 | 4.75 |
| 44 | 2.88 | 2.87 | 2.83 | 80 | 9.01 | 7.22 | 4.76 |
| 45 | 2.94 | 2.93 | 2.88 | 81 | 9.47 | 7.39 | 4.78 |
| 46 | 2.99 | 2.98 | 2.93 | 82 | 9.95 | 7.56 | 4.79 |
| 47 | 3.05 | 3.04 | 2.98 | 83 | 10.47 | 7.71 | 4.79 |
| 48 | 3.11 | 3.10 | 3.03 | 84 | 11.02 | 7.86 | 4.80 |
| 49 | 3.18 | 3.16 | 3.09 | 85 | 11.61 | 8.00 | 4.81 |
| 50 | 3.24 | 3.22 | 3.14 | 86 | 12.24 | 8.13 | 4.81 |
| 51 | 3.31 | 3.29 | 3.20 | 87 | 12.91 | 8.24 | 4.81 |
| 52 | 3.39 | 3.36 | 3.26 | 88 | 13.61 | 8.35 | 4.81 |
| 53 | 3.47 | 3.44 | 3.32 | 89 | 14.37 | 8.45 | 4.81 |
| 54 | 3.55 | 3.51 | 3.39 | 90 | 15.17 | 8.54 | 4.81 |
| 55 | 3.63 | 3.60 | 3.45 | 91 | 16.01 | 8.61 | 4.81 |
| 56 | 3.73 | 3.68 | 3.52 | 92 | 16.91 | 8.68 | 4.81 |
| 57 | 3.82 | 3.77 | 3.58 | 93 | 17.86 | 8.74 | 4.81 |
| 58 | 3.92 | 3.87 | 3.65 | 94 | 18.87 | 8.80 | 4.81 |
| 59 | 4.03 | 3.97 | 3.72 | 95 | 19.96 | 8.84 | 4.81 |
| 60 | 4.15 | 4.07 | 3.79 | 96 | 21.13 | 8.88 | 4.81 |

## TABLE 2

### MONTHLY INCOME FOR LIFE AND LIFE WITH GUARANTEED PERIODS

Equal monthly payments for life only and for guaranteed periods of 10 or 20 years as elected and for life thereafter as shown in the table below.  Amount of each monthly installment shown is per $1,000 of net Proceeds.  Amounts are based on Annuity 2000 Mortality Table and 1.5% Interest and subject to the attained age set back table in the Annuity Tables provision.

**Female**

| Settlement Age of Payee | Life Only | Life with 10 Year Certain | Life with 20 Year Certain | Settlement Age of Payee | Life Only | Life with 10 Year Certain | Life with 20 Year Certain |
|---|---|---|---|---|---|---|---|
| 25 | $2.10 | $2.10 | $2.10 | 61 | $3.88 | $3.83 | $3.65 |
| 26 | 2.13 | 2.12 | 2.12 | 62 | 3.99 | 3.94 | 3.73 |
| 27 | 2.15 | 2.15 | 2.14 | 63 | 4.11 | 4.05 | 3.81 |
| 28 | 2.17 | 2.17 | 2.17 | 64 | 4.23 | 4.16 | 3.88 |
| 29 | 2.19 | 2.19 | 2.19 | 65 | 4.37 | 4.28 | 3.96 |
| 30 | 2.22 | 2.22 | 2.21 | 66 | 4.51 | 4.41 | 4.04 |
| 31 | 2.24 | 2.24 | 2.24 | 67 | 4.66 | 4.55 | 4.11 |
| 32 | 2.27 | 2.27 | 2.27 | 68 | 4.83 | 4.69 | 4.18 |
| 33 | 2.30 | 2.30 | 2.29 | 69 | 5.00 | 4.84 | 4.26 |
| 34 | 2.33 | 2.33 | 2.32 | 70 | 5.19 | 5.00 | 4.32 |
| 35 | 2.36 | 2.36 | 2.35 | 71 | 5.39 | 5.17 | 4.39 |
| 36 | 2.39 | 2.39 | 2.38 | 72 | 5.61 | 5.34 | 4.45 |
| 37 | 2.42 | 2.42 | 2.41 | 73 | 5.85 | 5.52 | 4.50 |
| 38 | 2.46 | 2.45 | 2.44 | 74 | 6.11 | 5.71 | 4.55 |
| 39 | 2.49 | 2.49 | 2.48 | 75 | 6.39 | 5.91 | 4.60 |
| 40 | 2.53 | 2.53 | 2.51 | 76 | 6.69 | 6.11 | 4.64 |
| 41 | 2.57 | 2.56 | 2.55 | 77 | 7.01 | 6.31 | 4.67 |
| 42 | 2.61 | 2.60 | 2.59 | 78 | 7.36 | 6.52 | 4.70 |
| 43 | 2.65 | 2.64 | 2.63 | 79 | 7.74 | 6.73 | 4.72 |
| 44 | 2.69 | 2.69 | 2.67 | 80 | 8.16 | 6.93 | 4.75 |
| 45 | 2.74 | 2.73 | 2.71 | 81 | 8.60 | 7.13 | 4.76 |
| 46 | 2.79 | 2.78 | 2.76 | 82 | 9.09 | 7.33 | 4.78 |
| 47 | 2.84 | 2.83 | 2.80 | 83 | 9.61 | 7.52 | 4.79 |
| 48 | 2.89 | 2.88 | 2.85 | 84 | 10.18 | 7.69 | 4.80 |
| 49 | 2.94 | 2.93 | 2.90 | 85 | 10.79 | 7.86 | 4.80 |
| 50 | 3.00 | 2.99 | 2.95 | 86 | 11.45 | 8.01 | 4.81 |
| 51 | 3.06 | 3.05 | 3.00 | 87 | 12.16 | 8.15 | 4.81 |
| 52 | 3.13 | 3.11 | 3.06 | 88 | 12.91 | 8.27 | 4.81 |
| 53 | 3.19 | 3.18 | 3.12 | 89 | 13.71 | 8.38 | 4.81 |
| 54 | 3.26 | 3.25 | 3.18 | 90 | 14.55 | 8.48 | 4.81 |
| 55 | 3.34 | 3.32 | 3.24 | 91 | 15.43 | 8.56 | 4.81 |
| 56 | 3.41 | 3.39 | 3.30 | 92 | 16.34 | 8.64 | 4.81 |
| 57 | 3.50 | 3.47 | 3.37 | 93 | 17.29 | 8.71 | 4.81 |
| 58 | 3.58 | 3.56 | 3.44 | 94 | 18.29 | 8.76 | 4.81 |
| 59 | 3.68 | 3.64 | 3.51 | 95 | 19.32 | 8.81 | 4.81 |
| 60 | 3.78 | 3.74 | 3.58 | 96 | 20.42 | 8.85 | 4.81 |

## TABLE 3

### JOINT AND SURVIVOR INCOME FACTORS

We will furnish values for Age combinations not shown in the table on request.  They will be calculated on the same basis as those in this table.

| Female Age | Male Age | | | | | |
|---|---|---|---|---|---|---|
| | 45 | 50 | 55 | 60 | 65 | 70 |
| 45 | $2.51 | $2.58 | $2.63 | $2.67 | $2.69 | $2.71 |
| 50 | 2.61 | 2.72 | 2.80 | 2.87 | 2.92 | 2.95 |
| 55 | 2.70 | 2.85 | 2.98 | 3.09 | 3.18 | 3.24 |
| 60 | 2.77 | 2.96 | 3.15 | 3.32 | 3.47 | 3.58 |
| 65 | 2.83 | 3.05 | 3.29 | 3.54 | 3.77 | 3.97 |
| 70 | 2.87 | 3.12 | 3.41 | 3.73 | 4.07 | 4.39 |

Amount of each monthly installment shown per $1,000 of net Proceeds.  Amounts are based on Annuity 2000 Mortality Table and 1.5% interest and subject to the attained age set back table in the Annuity Tables provision.

## TABLE OF GUARANTEED VALUES

These values are based on Your Initial Premium paid at issue, and additional planned Premium amounts as indicated on Your Application and shown on the contract specifications page.  If You pay Premiums on any other basis or take any withdrawals, these values will vary accordingly.  Minimum Guaranteed Contract Values are calculated at the minimum guaranteed interest rate.

| Contract Year | Premium | Minimum Guaranteed Contract Value |
|---|---|---|
| 1 | $10,000.00 | $8,942.50 |
| 2 | 5,000.00 | 13,610.49 |
| 3 | 5,000.00 | 18,381.17 |
| 4 | 5,000.00 | 23,256.80 |
| 5 | 5,000.00 | 28,239.70 |
| 6 | 5,000.00 | 33,332.22 |
| 7 | 5,000.00 | 38,536.78 |
| 8 | 5,000.00 | 43,855.84 |
| 9 | 5,000.00 | 49,291.92 |
| 10 | 5,000.00 | 54,847.59 |
| 11 | 5,000.00 | 60,525.49 |
| 12 | 5,000.00 | 66,328.30 |
| 13 | 5,000.00 | 72,258.77 |
| 14 | 5,000.00 | 78,319.72 |
| 15 | 5,000.00 | 84,514.00 |
| 16 | 5,000.00 | 90,844.56 |
| 17 | 5,000.00 | 97,314.39 |
| 18 | 5,000.00 | 103,926.56 |
| 19 | 5,000.00 | 110,684.19 |
| 20 | 5,000.00 | 117,590.49 |
| Age 65 | 5,000.00 | 195,586.71 |

The above values are based on the following:
Initial Premium:  [$10,000.00]
Planned Premium Amount:  [$5,000.00]
Planned Premium Mode:  [Annual]

# CONSECO INSURANCE COMPANY

11815 N. Pennsylvania, Carmel, IN 46032-4972 .

## WAIVER OF SURRENDER CHARGES FOR
## SKILLED NURSING FACILITY RIDER

This Rider is a part of the Base Contract.  Rider(s), Base Contract, and attached Application make up the entire Contract.

## DEFINITIONS

When We use these words, We mean:

| | |
|---|---|
| Rider | - This Rider. |
| Base Contract | - The Contract to which this Rider is attached. |
| Annuitant | - The Annuitant under the Base Contract. |
| Effective Date | - The Effective Date of the Base Contract and this Rider. |
| Contract Year | - A one year period starting on the Effective Date. |

Other definitions as used in the Base Contract, apply to this Rider.

## RIDER BENEFIT

We will increase the Penalty-free Withdrawal amount allowed under the Base Contract to 20% if:

1.  The Annuitant stays in a Skilled Nursing Care Facility for 90 consecutive days;

2.  Stay begins after the first Contract Year; and

3.  We receive proof of stay.

All other Limitations under the Base Contract apply.

**Skilled Nursing Facility—** are a health facility or a distinct part of a hospital which provides continuous skilled nursing care and supportive care to patients whose primary need is for availability f skilled nursing care on an extended basis.  It provides 24-hour pharmaceutical services and an activity program.

Qualified Nursing Care Centers Do Not Include:

1.  Drug or alcohol treatment centers;

2.  Homes for the aged or mentally ill, community living centers, or places that primarily provide
      domiciliary, residency or retirement care; or

3.  Places owned or operated by a member of the Owner's or Annuitant's immediate family.

## TERMINATION

Rider terminates on earliest of the date:

1.   The Base Contract matures;

2.   The Base Contract terminates; or

3.   The Annuitant dies.

## GENERAL

Unless stated otherwise, all provisions and limitations of the Base Contract apply to this Rider.

CONSECO INSURANCE COMPANY

CARMEL, INDIANA

Secretary

President

# CONSECO INSURANCE COMPANY
11815 N. Pennsylvania, Carmel, Indiana 46032-4555

## TERMINAL ILLNESS RIDER
### WAIVER OF SURRENDER CHARGES FOR TERMINAL ILLNESS

This Rider is part of the Base Contract.  Rider(s), Base Contract and attached application make up the entire contract.

## DEFINITIONS -

When we use these words, we mean:

| | |
|---|---|
| We, Our, Us | - CONSECO INSURANCE COMPANY |
| You, Your | - The Owner as defined under the Base Contract |
| Rider | - This Rider |
| Base Contract | - The contract to which this Rider is attached |
| Annuitant | - The Annuitant under the Base Contract |
| Effective Date | - The Effective Date of the Base Contract and this Rider |
| Contract Year | - A one-year period starting on the Effective Date |
| Contract Value | - As defined in the Base Contract |
| Notice | - Written verification of Annuitant's Terminal Illness, a Qualified Physician signs, We receive and accept.  Notice must include documentation supported by clinical, radiological, or laboratory evidence of the condition.  We may require an additional examination by a Qualified Physician of our choice at our expense. |
| Qualified Physician | - Any person, who is licensed as an MD or DO to practice medicine in the United States and who is not the Annuitant, Owner or any member of either family. |
| Terminal Illness | - Any disease or medical condition which a Qualified Physician expects will result in death within one year. |

## RIDER BENEFIT -
You may take one Free Partial Withdrawal of up to 75% of Base Contract Value after a Qualified Physician provides Notice he/she has diagnosed the Annuitant as having a Terminal Illness. To qualify, the diagnosis and Notice must occur after the first Contract Year ends.

NOTE:  If there are Joint Annuitants, You may exercise this Rider once, for either the first or second Annuitant to become Terminally Ill, not both.

## TERMINATION -

Rider terminates on earliest of the date:

1. the Base Contract matures;
2. the Base Contract terminates;
3. You use this Rider; or
4. the Annuitant dies.*

\* If the Annuitant is the Owner, the beneficiary under the Base Contract is the Annuitant's spouse, the spouse opts to become the new Owner, and You have not used this Rider, then this Rider will remain in effect under the Ownership of the surviving spouse.

## GENERAL -

Unless stated otherwise, all provisions and limitations of the Base Contract apply to this Rider.

CONSECO INSURANCE COMPANY
CARMEL, INDIANA

Karl W Kiely

Secretary

Michael J Duber

President

**CONSECO INSURANCE COMPANY** JUN 2 1 2006
Administrative Office
P.O. Box 1909, Carmel, Indiana 46082 RECEIVED - NEW BUSINESS    *A0602370*
1-800-544-0457                                                        A0602370
ANNUITY APPLICATION

OWNER: JOHN   NJOROGE    Birthdate 66    Soc. Sec. or Tax ID No. ____ 0969
Address 317 W. REGENT ST. #4 City ENGLEWOOD    State CA   Zip 90301    Phone No (310) 412-1496

JOINT OWNER: _____ Birthdate _____ Soc. Sec. or Tax ID No. _____
Address _____ City _____ State ____ Zip ____ Phone No. _____

**BENEFICIARY**
Primary: ROBERTSON  KIMONDO    Relationship: FATHER
Address 317 W. REGENT ST. #4 City ENGLEWOOD    State CA   Zip 90301    Phone No. (310) 412-1496
Contingent: CAROLINE  KIMONDO    Relationship: SISTER
Address 2401 S. HACIENDA BLVD. City HACIENDA HEIGHT State CA  Zip 91745    Phone No. (626) 336-7257

ANNUITANT: JOHN NJOROGE    Birthdate _____ Sex ____ Soc. Sec. No. _____
Address 317 W. REGENT ST. #4 City ENGLEWOOD    State CA  Zip 90301    Phone No (310) 412-1496

JOINT ANNUITANT: _____ Birthdate _____ Sex ____ Soc. Sec. No. _____
Address _____ City _____ State ____ Zip ____ Phone No. _____

**BENEFICIARY**
Name _____ Relationship to Annuitant: _____
Address _____ City _____ State ____ Zip ____ Phone No. _____

1. Contract form: RETIREMENT EDGE
   Settlement option (Immediate annuity only): _____
2. Tax status:  ☒ Non-Qualified
   ☐ IRA*   ☐ ROTH IRA*   ☐ SEP/IRA*
   ☐ Sec. 401(k)  ☐ Sec. 401(a)  ☐ Sec. 457  ☐ 403(b)
   * Indicate Contribution Year: _____
3. Maturity date: _____
4. Will this annuity replace any existing insurance or
   annuities in this or any other company?
   ☐ Yes  ☒ No  (If Yes, complete replacement forms.)
   Name of company: _____
5. Premium submitted with application: $ 50,000.00
   Is this a rollover? (Qualified plans only)  Yes ☐  No ☒

6. Will initial premium be a 1035 Exchange, or Direct Transfer? Yes ☐   No ☒
   If Yes, from what company? _____
   Anticipated amount: $ _____
7. Billing information (Flexible contracts only):
   Amount: $ 50.00
   Mode                      Type
   ☒ Monthly               ☐ ABC (Automatic Bank Check)
   ☐ Quarterly             ☐ Direct Bill
   ☐ Semi-annual           ☐ List Bill
   ☐ Annual
   Non-contributing months: _____
8. Special billing address (i.e., List bills): _____

Any person who knowingly and with intent to defraud any Insurance company submits an application for insurance or statement of claim containing any materially false information or conceals information concerning any fact material thereto for the purpose of misleading is committing a crime which is subject to criminal and civil penalties.

☒ Check here if the following paragraph is applicable.
I/We understand that the contract for which I/we have applied is an equity indexed annuity contract. I/We also understand that the values of the contract may be effected by an external index and the contract does not directly participate in any stock or equity investments.

I/We understand and agree that this contract may include an administrative remedies provision which must be exhausted prior to any other action being taken at law or in equity. The provision may provide for arbitration, which may be binding, depending on applicable state and federal law.

The statements above are true and complete. Please attach an extra sheet of paper of additional information if necessary.

Signed at INGLEWOOD    CA                    on   06-12-06
                   City/State                                      Date
Robertson Kimondo - POA
          Owner's Signature                              Joint Owner's Signature

Do you have any reason to believe that replacement of existing insurance may be involved?  Yes ☐  No ☒
If "Yes" give details: _____
ROBERTSON  KIMONDO/IA851          Robertson  Kimondo  (310) 412-1496
   Agent's Name/Number (Please Print)              Agent's Signature/Phone Number

_____
Resident Agent's Countersignature/Phone Number
(where required)
NOTE: Make all Checks payable to Conseco Insurance Company

CAAC-8006                                                                    07/04

, CONSECO INSURANCE COMPANY

Administrative Office: 11815 N. Pennsylvania Street, P.O. Box 1909, Carmel, Indiana 46082-4909

**ANNUITY APPLICATION SUPPLEMENT**

CONSECO.



This Supplement is a part of the application attached and dated: 06-12-06

**1. CONTRACT OWNER(S) (SAME AS THE APPLICATION TO WHICH THIS SUPPLEMENT IS ATTACHED)**

RECEIVED

| Name | first JOHN | mi | last NJOROGE |
| --- | --- | --- | --- |
| Name | first | mi | last |

JUN 2 1 2006

ANNUITY-NEW BUSINESS

**2. CREDIT OPTION SELECTION**

| 10 | % Option A, Fixed Interest | 10 | % Option G, S&P 400 MidCap Index (APTP) |
| --- | --- | --- | --- |
| 10 | % Option B, S&P 500 Equity Index (Avg) | 10 | % Option H, Russell 2000 Index (APTP) |
| 10 | % Option C, S&P 400 MidCap Index (Avg) | 10 | % Option I, Dow Jones Index (APTP) |
| 10 | % Option D, Russell 2000 Index (Avg) | 10 | % Option J, S&P 500 Equity Index (MPTP) |
| 10 | % Option E, Dow Jones Index (Avg) | 100 | % Total (must equal 100%) |
| 10 | % Option F, S&P 500 Equity Index (APTP) | | |

"Standard & Poor's 500®" and "Standard & Poor's MidCap 400" are trademarks of The McGraw-Hill Companies, Inc. and have been licensed for use by Conseco Services, L.L.C. and its affiliates. This Product is not sponsored, endorsed, sold, or promoted by Standard & Poor's and Standard & Poor's makes no representation regarding the advisability of purchasing this Product.

This contract is not promoted, sponsored or endorsed by, nor in any way affiliated with Frank Russell Company. Frank Russell Company is not responsible for and has not reviewed this contract nor any associated literature or publications and Frank Russell Company makes no representation or warranty, express or implied, as to their accuracy, or completeness, or otherwise.

"Dow Jones" and "Dow Jones Industrial Average℠" are service marks of Dow Jones & Company, Inc. and have been licensed for use for certain purposes by Conseco Services, LLC. Conseco Insurance Company's CIC-4006 annuity based on the Dow Jones Industrial Average℠, is not sponsored, endorsed, sold or promoted by Dow Jones, and Dow Jones makes no representation regarding the advisability of investing in such product.

**3. FRAUD WARNING**

Any person who knowingly and with intent to defraud any insurance company submits an application for insurance or statement of claim containing any materially false information or conceals information concerning any fact material thereto for the purpose of misleading is committing a crime which is subject to criminal and civil penalties.

**Arkansas, Kentucky, Ohio, New Mexico and Pennsylvania Residents, Please Note:** Any person who knowingly, and with intent to defraud any insurance company or other person, files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Colorado Residents, Please Note:** It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, and denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado division of insurance within the department of regulatory agencies.

**District of Columbia Residents, Please Note:** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

**Maine, Tennessee and Virginia Residents, Please Note:** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial for insurance benefits.

**New Jersey Residents, Please Note:** Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

CIC-4006APP

**APPLICANT STATEMENT**

All statements made in this application supplement form are true and I/we agree to all terms and conditions as shown on this supplement form. I/We further agree that this supplement shall be a part of the annuity contract. The annuity applied for is not unsuitable for my/our financial objective, situation and needs. Under penalty of perjury, the contract owner certifies that the Social Security (or Taxpayer Identification) number is correct as it appears in the application to which this supplement form is attached.

I understand that the contract for which I/(we) have applied is a flexible premium equity indexed deferred annuity contract. I also understand that the values of the contract may be affected by an external index, but the contract does not directly participate in any stock or equity investments.

Signed at _ENGLEWOOD, CALIF_ this _12_ day of _JUNE_ , Year _____

x _Robertson Kimondo_ P D A           x _____
Signature of Owner/Applicant (if other than Annuitant)                Signature of Joint Owner

Date _06-12-06_ Telephone _(310) 412-1496_     Date _____ Telephone _____

**AGENT STATEMENT**

I have complied with requirements for disclosure and/or replacement as necessary. I certify that I have complied with the Company's policy statement regarding sales practices in connection with insurance products that are not securities.

x _ROBERTSON KIMONDO_   x _Robertson Kimondo_       _1A851_     _06-12-06_
Agent/Representative Full Name (Please print)   Signature of Agent/Representative    Agent #        Date

RECEIVED
JUN 2 1 2006
ANNUITY-NEW BUSINESS

CIC-4006APP

# WASHINGTON NATIONAL INSURANCE COMPANY

Flexible Premium Indexed Deferred Fixed Annuity Contract
Death Benefit Prior to Maturity
Monthly Income at Maturity
No Dividends
Non-Participating
This contract does not participate directly in any Stock Market or Equity Index.
This is a legal contract between You and Us.

CIC-4006(Rev)

# EXHIBIT 5



(/)

**Home (/)**      **Recent Verdicts (/jury-verdicts/frontpage/)**

**Search Verdicts (/uncategorized/search-verdicts)**      **About (/about)**

**Subscribe (/subscribe)**      **Attorney Services (/professional-directory/frontpage/)**

**Report A Verdict (/jury-verdicts/verdictsubmissions/submit-a-verdict/product)**

**Contact (/contact-us)**

# Bad-faith claim against title insurer for denial of coverage for "lack of legal access" to home. $1.5M. Riverside County.

## Summary

Couple builds home but later finds out they have no legal access to utilities or public road.

## The Case

**Case Name:** Keith Jones and Patricia Jones v. Commonwealth Land Title Insurance Company

**Court and Case Number:** Riverside Superior Court / RIC1612837

**Date of Verdict or Judgment:** Monday, June 24, 2019

**Date Action was Filed:** Monday, October 03, 2016

**Type of Action:** Insurance -- Bad Faith, Claims Handling (/jury-verdicts/category/insurance-bad-faith-claims-handling/)

**Judge or Arbitrator(s):** Hon. David M. Chapman

**Plaintiffs:**

Keith Jones and Patricia Jones

**Defendants:**

Commonwealth Land Title Insurance Company

**Type of Result:** Jury Verdict

## The Result

**Gross Verdict or Award:** $1,550,000

**Economic Damages:**

Unpaid insurance policy benefits: $300,000

Lost wages: $400,000
Consequential damages: $250,000
**Non-Economic Damages:**
Emotional distress: $600,000
**Punitive Damages:**
The jury did not award punitive damages.
**Trial or Arbitration Time:** 14 court days
**Jury Deliberation Time:** 1 day
**Jury Polls:** 12-0 verdict on both of plaintiffs' claims. (Breach of contract and breach of the implied covenant of good faith and fair dealing.)

# The Attorneys

**Attorney for the Plaintiff:**
Shernoff Bidart Echeverria by Samuel L. Bruchey and Cooper Johnson, Beverly Hills.
**Attorney for the Defendant:**
Fidelity National Law Group by Howard Brody and Mary Lazaran, Los Angeles.

# The Experts

**Plaintiff's Technical Expert(s):**
Guy Kornblum, insurance bad faith.
**Defendant's Technical Expert(s):**
Anya Stanley, insurance bad faith.
Daniel Poyourow, property appraisal and valuation.
Robert Glushon, Luna & Glushon, due diligence of buyers when purchasing vacant land.

# Facts and Background

**Facts and Background:**
Plaintiffs' lawsuit arose from a denial of insurance policy benefits. In 2012, plaintiffs purchased an undeveloped parcel of land in Riverside County near Temecula and purchased a title insurance policy from Commonwealth Land Title Insurance Company.
The insurance policy insured plaintiffs from loss resulting from a "lack of legal access" to their property.
Plaintiffs hired a contractor to build them a home on the parcel. By 2014, construction on the home was nearly complete, but the property was still not connected to a paved public road and it did not have utilities, such as electricity and water services.
On November 30, 2015, plaintiffs submitted an insurance claim to Commonwealth on the basis that they had no legal access necessary to pave a road connecting the land to a public road or bring utilities to their home. On June 2, 2016, Commonwealth adopted the position of the County of Riverside and concluded that legal access existed to the property and it determined that the plaintiffs' claim was resolved.
It was alleged that plaintiffs lost their property to foreclosure. The stress of Commonwealth's denial and the loss of their property caused plaintiff Keith Jones to lose his job as a pilot for Delta Airlines.
On October 3, 2016, plaintiffs filed a lawsuit against Commonwealth alleging that the insurance company unreasonably denied their insurance claim, for which they sustained damages.

The parties agreed to bifurcate trial. During phase one, which took place in December 2018, the parties presented evidence to the court on the specific question of whether legal access existed to plaintiffs' property on June 2, 2016 when Commonwealth denied their insurance claim. The court ruled that no legal access existed to the property.

**Plaintiff's Contentions:**

During the second phase of the trial, plaintiffs alleged that Commonwealth breached the terms of their insurance contract and acted in bad faith. Plaintiffs sought compensation for their losses, including the loss of their property.

**Defendant's Contentions:**

It was the contention of Commonwealth that "physical access" such as a paved road and utilities was not covered under the title insurance policy.

That the insurance claim for physical access such as a paved road and utilities was stated to be not insured under the title insurance policy.

## Additional Notes

Per defense counsel:

Plaintiffs' demand pre-trial was $2.4 million, reduced during trial to $2.1 million.

Defendant's offer was $300,000 pre-trial and increased to $400,000 during the trial.

(http://www.jvdmg.(i)citted)obncd)m/)

Print (/jury-verdicts/item/insurance-bad-faith-claims-handling/bad-faith-claim-for-lack-of-legal-access?print=1&tmpl=component)

## Disclaimer

This is not an official court document. While the publisher believes the information to be accurate, the publisher does not guarantee it and the reader is advised not to rely upon it without consulting the official court documents or the attorneys of record in this matter who are listed above.

© Copyright 2020 by Neubauer & Associates, Inc. All rights reserved. www.juryverdictalert.com



# EXHIBIT 6



(/)

**Home** (/)      **Recent Verdicts** (/jury-verdicts/frontpage/)

**Search Verdicts** (/uncategorized/search-verdicts)      **About** (/about)

**Subscribe** (/subscribe)      **Attorney Services** (/professional-directory/frontpage/)

**Report A Verdict** (/jury-verdicts/verdictsubmissions/submit-a-verdict/product)

**Contact** (/contact-us)

# RV insurance claim denied after fire. $8.4M. Riverside County.

## Summary
Property insurer's fire investigator changes his initial report after second inspection of RV; insurer then denies claim.

## The Case

> **Case Name:** Octavio Lopez v. National General Assurance Company
> **Court and Case Number:** Riverside Superior Court / RIC1808643
> **Date of Verdict or Judgment:** Monday, November 25, 2019
> **Date Action was Filed:** Wednesday, May 30, 2018
> **Type of Action:** Breach of Good Faith (/jury-verdicts/category/breach-of-good-faith/), Insurance – Bad Faith, Claims Handling (/jury-verdicts/category/insurance-bad-faith-claims-handling/)
> **Judge or Arbitrator(s):** Hon. Chad Firetag
> **Plaintiffs:**
> Octavio Lopez
> **Defendants:**
> National General Assurance Company
> **Type of Result:** Jury Verdict

## The Result

> **Gross Verdict or Award:** $8,463,833
> **Economic Damages:**
> Contractual damages: $147,333
> **Non-Economic Damages:**

Past: $250,000
Future: $66,500
**Punitive Damages:**
$8,000,000
**Trial or Arbitration Time:** 11 days.
**Jury Deliberation Time:** 2 hours for Phase 1; 4 hours for Phase 2 (punitive damages).
**Jury Polls:** 12-0 Phase 1; 9-3 Phase 2 (punitive damages).

# The Attorneys

**Attorney for the Plaintiff:**
Schwartzberg & Luther, APC by Sagi Schwartzberg, Rancho Cucamonga.
**Attorney for the Defendant:**
Murchison & Cumming LLP by Jean M. Daly and Tyler E. Sanchez, Los Angeles.

# The Experts

**Plaintiff's Technical Expert(s):**
Daina Dillabough, Fair Claims Act, standard of care.
Daniel Bonelli, fire investigations.
**Defendant's Technical Expert(s):**
Lola Hogan, Fair Claims Act, standard of care.
K.C. Hester, fire investigations.

# Facts and Background

**Facts and Background:**
After plaintiff's RV caught on fire, he made a claim with National General for coverage under his RV insurance policy.
National General opened an investigation as to the cause of the fire. Initially, National General's fire investigator determined that the fire was electrical and there was no sign of arson and closed the investigation.
Approximately one week later, the fire investigator requested to conduct another inspection, wherein he discovered another point of origin. Three weeks after that he authored a report that the fire was intentionally set by an unknown person.
National General then conducted plaintiff's Examination Under Oath, wherein two of National General's Special Investigation Unit investigators questioned plaintiff. Two days after the Examination Under Oath, National General denied the claim based on alleged material misrepresentations.
**Plaintiff's Contentions:**
Plaintiff claimed that, after the fire investigator reported that the fire was clearly an electrical fire, National General discovered that plaintiff had a purchase price guarantee endorsement which provided coverage up to the amount plaintiff purchased his RV for instead of actual cash value. It was shortly thereafter that the fire investigator sought to re-examine the RV and concluded it was an intentional fire. Plaintiff further claimed that National General believed that he set the RV on fire prior to his Examination Under Oath based on their fire investigator's report, and used the Examination Under Oath as a setup to fabricate and manufacture material misrepresentations to deny his claim, which they did only a few days later.

Plaintiff lastly claimed that National General failed to consider his interest, failed to diligently search for and consider evidence that would support coverage, and acted with malice, oppression or fraud during the investigation and ultimate denial.

**Defendant's Contentions:**

Defendant claimed that it acted reasonably based on the information it had at the time, and that plaintiff's statements during his Examination Under Oath and during the entirety of the investigation were material misrepresentations which allowed them to deny the claim. Defendant claimed that it properly investigated the fire loss and reasonably relied on their fire expert's investigation and conclusion, and therefore acted in good faith in adjusting plaintiff's claim.

# Injuries and Other Damages

**Physical Injuries claimed by Plaintiff:**

None.

Emotional Distress.

(http://www.judgepedia.com/)

Print (/jury-verdicts/item/breach-of-good-faith/rv-insurance-bad-faith?print=1&tmpl=component)

# Disclaimer

This is not an official court document. While the publisher believes the information to be accurate, the publisher does not guarantee it and the reader is advised not to rely upon it without consulting the official court documents or the attorneys of record in this matter who are listed above.

© Copyright 2020 by Neubauer & Associates, Inc. All rights reserved. www.juryverdictalert.com


VERDICT VIDEOS
626.335.9794
verdictvideos.com

# EXHIBIT 7


(/)

**Home (/)     Recent Verdicts (/jury-verdicts/frontpage/)**

**Search Verdicts (/uncategorized/search-verdicts)     About (/about)**

**Subscribe (/subscribe)     Attorney Services (/professional-directory/frontpage/)**

**Report A Verdict (/jury-verdicts/verdictsubmissions/submit-a-verdict/product)**

**Contact (/contact-us)**

# Insurance company adds to family's woes after extensive water damage; bad faith. $1.3 million. Los Angeles County.

## Summary
Burglars said to leave the tub running and water severely damages the house.
## The Case
> **Case Name:** Steven Lopez v. IDS Ameriprise
> **Court and Case Number:** Los Angeles Superior Court / BC605264
> **Date of Verdict or Judgment:** Thursday, March 23, 2017
> **Date Action was Filed:** Monday, December 28, 2015
> **Type of Action:** Insurance – Bad Faith, Claims Handling (/jury-verdicts/category/insurance-bad-faith-claims-handling/)
> **Judge or Arbitrator(s):** Hon. Mary Ann Murphy
> **Plaintiffs:**
> Steven Lopez, 39.
> **Defendants:**
> IDS Ameriprise
> **Type of Result:** Jury Verdict

## The Result
> **Gross Verdict or Award:** $1,334,072.98 plus attorneys fees
> **Economic Damages:**
> $134,072.98

**Non-Economic Damages:**
$200,000 and attorney's fees
**Punitive Damages:**
$1,000,000
**Trial or Arbitration Time:** 8 days.
**Jury Deliberation Time:** 4 days.

# The Attorneys

**Attorney for the Plaintiff:**
Kabateck Brown Kellner LLP by Brian Kabateck and Shant Karnikian, Los Angeles.
Evangeline Fisher Grossman Law by Evangeline Grossman, Claremont.
**Attorney for the Defendant:**
Woolls Peer Dollinger & Scher by H. Douglas Galt, Los Angeles.

# The Experts

**Plaintiff's Technical Expert(s):**
Jan Brussel, construction, Costa Mesa.
Daina Dillabough, claims handling, Laguna Niguel.

**Defendant's Technical Expert(s):**
Joanna Moore, claims handling.

# Facts and Background

**Facts and Background:**
Plaintiff Steven Lopez is a single father of five and homeowner who lives in Torrance. In September 2013, Mr. Lopez's home was burglarized; in addition to thieves stealing a significant amount of personal property, they turned the water on in the upstairs bathroom, which caused flooding throughout the house.
Plaintiff had a homeowner's insurance policy with defendant Ameriprise that covered the burglary and the water damage. After plaintiff made a claim on his insurance policy, Ameriprise acted in bad faith. Within a week of his claim, plaintiff's insurance company started a fraud investigation in spite of a police report detailing the nature of the theft.
Lopez hired a special property insurance attorney, Evangeline Grossman, to force defendant to resolve the claim.
During the bad faith trial – and three years, six months and 11 days after the damage – Ameriprise paid more than $60,000, claiming they had just then realized the house sustained more damage than they originally estimated.

**Plaintiff's Contentions:**
That Ameriprise only paid for minimal water damage, mold remediation, insufficient repairs and initially refused to pay for the family to live elsewhere while the claim was adjusted and repairs performed. After living away from the house for months, plaintiff had no choice but to patch his home back together and return to it. Plaintiff claimed that the insurer failed to fully investigate the claim and acted in bad faith.

**Defendant's Contentions:**

Ameriprise claimed that they acted reasonably given the circumstances. They claimed that they paid everything they were obligated to pay under the policy and that they were unaware of further damage to the property until plaintiff's expert testified about it at trial.

## Injuries and Other Damages

Emotional distress, unpaid living expenses, and $187,000 in remaining work to restore plaintiff's home to pre-loss condition.

## Demands and Offers

**Defendant §998 Offer:** $50,000

(http://www.jurys.com/)

Print (/jury-verdicts/item/insurance-bad-faith-claims-handling/steven-lopez-v-ids-ameriprise?print=1&tmpl=component)

## Disclaimer

This is not an official court document. While the publisher believes the information to be accurate, the publisher does not guarantee it and the reader is advised not to rely upon it without consulting the official court documents or the attorneys of record in this matter who are listed above.

© Copyright 2020 by Neubauer & Associates, Inc. All rights reserved. www.juryverdictalert.com



VERDICT VIDEOS

626.335.9794
verdictvideos.com

We Bring Your