Anthony T. Case, Esq. (SBN 149583)
FARMER CASE & FEDOR
402 West Broadway, Suite 1100
San Diego, California 92101
Tel: (619) 338-0300 | Fax: (619) 338-0180
tcase@farmercase.com

Attorneys for Defendant,
CNO Services, LLC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| JOHN NJOROGE<br><br>            Plaintiff,<br>    v.<br><br>CNO SERVICES, LLC,<br><br>            Defendant. | CASE NO. 2:20-cv-02004<br><br>**DEFENDANT CNO SERVICES, LLC'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND** |

COMES NOW the Defendant, CNO Services, LLC ("Defendant"), by counsel, and for its Opposition to Plaintiff's Motion to Remand (CM/ECF Document ("Doc.") #12), states as follows:

## I.    INTRODUCTION

Plaintiff John Njoroge ("Plaintiff") sued Defendant in Los Angeles Superior Court in a Complaint filed January 28, 2020. (Doc. #1, pp. 12-18). The Complaint seeks to hold Defendant liable in bad faith for alleged failure to honor an annuity policy allegedly issued on the life of Plaintiff's father, now deceased, on which Plaintiff is allegedly the beneficiary.

Plaintiff does not assert a claim for simple breach of contract, but chose to bring his claim in "two causes of action: Bad Faith Breach of Implied Obligation

1
DEFENDANT CNO SERVICES, LLC'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

of Good Faith And Fair Dealing and Bad Faith Failure to Properly Investigate Claim." (Memorandum of Points and Authorities in Support of Plaintiff's Motion to Remand ("Memo"), Doc. #12-1, p. 2). The *ad damnum* clause of the Complaint is reproduced verbatim, as follows:

> WHEREFORE, Plaintiffs prays for judgment as follows:
> 
> **ON ALL CAUSES OF ACTION.**
> 
> 1. For recovery of the value of the Annuity at the time of Mr. Kirnondo's death, estimated to be $50,000, plus interest since 2008.
> 
> 2. For punitive damages against Defendant for its bad faith breach of the implied obligation of good faith and fair dealing and failure to investigate Plaintiff's claim.
> 
> 3. For reasonable costs and attorney's fees against Defendant for its bad faith breach of the implied obligation of good faith and fair dealing and failure to investigate Plaintiff's claim.
> 
> 4. For any other compensatory, general, special, and consequential damages against Defendant.
> 
> 4. (sic) For such other and further relief as the Court may deem proper.

(Doc. #1, p. 17).

Defendant timely removed this matter to this Court by Notice dated February 28, 2020 (Doc. #1), alleging complete diversity of citizenship and an amount in controversy in excess of $75,000. Plaintiff now seeks remand solely on the basis that the amount in controversy is less than $75,000, and more specifically, he states:

> Plaintiff specifically alleged in his complaint that the amount in controversy is $50,000, well below the jurisdictional minimum required for diversity cases.

(Memo, p. 1).

One searches the Complaint in vain for any language which specifically alleges an "amount in controversy" of any amount and, more importantly, one searches in vain for anything which attempts to fix at or limit Plaintiff's prospective recovery to $50,000. "$50,000" is only given as an <u>estimate</u> of the value of the subject annuity <u>in 2008</u>, but the Complaint goes on to seek a recovery of interest on that sum; and, more importantly, seeks additional tort damages, punitive damages and attorney fees. (Doc. #1, p. 17). All of these claimed damages reckon in the proper computation of the amount in controversy and provide more than sufficient grounds for this Court to assert diversity jurisdiction.

## II. THE AMOUNT IN CONTROVERSY EXCEEDS $75,000

Plaintiff alleges that Defendant has improperly attempted a computation of the amount in controversy based on submitted evidence because "the complaint alleges a specific amount in damages". (Memo, p. 3). As shown above, by the very *ad damnum* clause of the Complaint, this assertion is simply untrue. As such, "the amount in controversy is calculated based upon the amount put into controversy by the complaint". *Olvera v. Quest Diagnostics,* No. 2:19-cv-06157-RGK-SK, 2019 WL 6492246, at *3 (C.D. Cal. Dec. 2, 2019).

In or with its Notice of Removal (Doc. #1), Defendant provides argument and evidentiary support for the inclusion of the following in the amount in controversy calculus: (1) Interest accrued on the annuity according to its terms (Doc. #1, p. 6, ¶ 22; Declaration of Rikkers, Doc. #1, pp. 42-44); (2) Future attorney fees (Doc. #1, pp. 5-6, ¶¶ 21-22); (3) Punitive damages (*Id*., ¶ 23); and (4) Emotional distress damages (Doc. #1, p. 6, ¶ 24.A).

The only specific element of Defendant's tendered computation which Plaintiff directly challenges is attorney fees. Plaintiff cites a 1982 Ninth Circuit case for the proposition that the only way "attorney's fees can be taken into account in determining the amount in controversy if a statute authorizes fees to a successful litigant" (Memo, p. 4). While that may have been the law in the Ninth

3
DEFENDANT CNO SERVICES, LLC'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

Circuit in 1982, it is no longer; at least since *Fritsch v. Swift Transportation Co. of Arizona*, *LLC*, 899 F.3d 785 (9th Cir. 2018) (future probable attorney fees recoverable under claims alleged are included in the amount in controversy)[1].

Where the Complaint alleges an insurer's violation of the duty of good faith and fair dealing under California law, Courts in this District have included so-called "*Brandt* [*v. Superior Court,* 37 Cal. 3d 813 (1985)] fees when assessing the amount in controversy". *Gonzalez v. General Ins. Co. of America,* No. 1:18-cv-01531-DAD-BAM, 2019 WL 698057, at *2 (C.D. Cal. Feb. 20, 2019). However, *Brandt* fees consist of "only those fees attributable to an attorney's efforts in obtaining benefits due". *Id*.

In *Gonzalez, supra,* the Court rejected a removing insurer's efforts to bridge the gap from a $21,000 claimed policy benefit to a $75,000 amount in controversy based on plaintiff's counsel's petition for wrongful removal fees at $500 per hour coupled with speculative efforts to extrapolate that to a full prospective *Brandt* fee award. In this case, the gap is much narrower. Defendant has provided uncontroverted evidence that the hypothetical value of the subject annuity as of the date of Plaintiff's father's death, with contractually accrued interest, would have been $63,864.55, leaving only a $11,136.45 gap. (Rikkers Declaration, *supra*). *See, California Spine and Neurosurgery Institute v. Health Care Service Corp.,* No. CV-19-04506-DSF, 2019 WL 3219136, at *2 (C.D. Cal. July 16, 2019) (Court will assume $8,388.15 gap between claimed compensatory damages and $75,000 will be bridged by some combination of attorney fees, other damages and punitive damages).

Plaintiff's counsel bills at $350 per hour. (Borenstein Declaration, Doc. #12-2, ¶9). The gap of 11,136.45 divided by 350 is approximately 32. If 100 hours is a

---

[1] Punitive damages may also be recovered in an insurance bad faith case under Cal. Civ Code § 3294. *See, J & J Holdings, Inc. v. Great American E & S Ins. Co*., No. CV-18-2487-DMG, 2018 WL 8333420, *4 (C.D. Cal. 2018).

"conservative" estimate of the time an attorney will take to litigate an employment discrimination case, then 32 hours must be a similarly conservative estimate of the prospective time reasonably to be spent by Plaintiff's counsel in hypothetically litigating the *Brandt* part of this case. *See, Reyes v. Staples Office Superstore*, LLC, No. CV-19-07086-CJC, 2019 WL 4187847, at *5 (C.D. Cal. Sept. 3, 2019). Plaintiff's counsel spent 6 hours drafting the Motion to Remand, and certainly litigating even a simple breach of insurance policy case would take at least 6 times that much effort.[2] The $11,136.45 gap is also about 17.5% of $63,864.55 or roughly half of a standard one-third contingent fee on the policy benefit alone.

In *Cassim v. Allstate Ins. Co.,* 33 Cal.4th 780, 811 (2004), the California Supreme Court explained at length the proper method of computing *Brandt* fees under either an hourly or contingent fee model of recovery, holding that the successful plaintiff pursuing such a matter on contingent fee is not limited to a percentage of the contract recovery. The Court specifically cited with approval *Campbell v. Cal-Guard Sur. Services, Inc.,* 62 Cal.App.4th 563, 572 (1998), in which the Court of Appeals directed a *Brandt* fee award on remand of $13,010 in fees on a contract recovery of $2,500.

In this case, Defendant has provided the evidence that the Court in *Gonzalez* found lacking. Defendant has presented summary-judgment type evidence of interest that would have accrued under the terms of the contract through Plaintiff's father's death, and not as an accessory demand. (Doc. #1, p. 6, ¶ 22; Declaration of Rikkers, Doc. #1, pp. 42-44). *See, Xerox Corp v. CBG Legal, Inc.,* No. CV-14-08948-SJO-MRW, 2015 WL 13309101, at *3 (C.D. Cal. 2015).

Defendant has also shown above that attorney fees alone would be likely to bridge the relatively minor gap between contract damages and the amount

---

[2] The Court may rely upon its own expertise in evaluating future attorney fees as part of an alleged amount in controversy. *Coronel v. Ford Motor Co.*, CV-19-09841-DSF, 2020 WL 550690, at *6 (C.D. Cal. Feb. 4, 2020).

recoverable for all the claims actually asserted. Additionally, Defendant has shown that California juries tend to award punitive damages at least equal to claimed compensatory damages in cases based on an insurer's bad faith failure to honor its policy; as well as emotional distress damages. (Doc. #1, p. 6, ¶ 24, Exhibits 5, 6 and 7). Here, Plaintiff alleges, among other things, that Defendant "denied the claim out of hand and without reviewing the claim" (Doc. #1, Compl. ¶ 45), which, if true (Defendant denies it), would make this case similar to the comparison cases tendered by Defendant.

In this case, punitive damages can be a fraction of claimed policy benefits and still make up the gap to $75,000+; no multiplier is needed. "As with the emotional distress damages, the Court need not determine whether the cases Defendant cites are sufficiently factually analogous, and need not put an exact numerical value on a potential punitive damages award to conclude that a substantial punitive damages award is likely if Plaintiff succeeds on his Complaint." *Mejia v. Parker Hannifin Corp.,* No. CV-17-8477-MWF, 2018 WL 582325, *5 (C.D. Cal. 2018).

### III. PLAINTIFF'S MEET-AND-CONFER REQUEST

Lastly, as explained more fully in the Declaration of Anthony T. Case filed herewith, counsel for Defendant must apologize for failing to substantively respond to Plaintiff's meet-and-confer request prior to this motion.[3] (Case Decl. ¶¶ 4-6). However, Defendant would not have agreed to remand the case in any event.

///
///
///
///
///

---

[3] Counsel will ensure compliance with Local Rule 7-3 in future motions.

(Case Decl. ¶ 7). Defendant's removal is made in good faith and is well founded in law and fact as shown in its notice of removal and this opposition to remand.

Dated this 11th day of May, 2020.

             FARMER CASE & FEDOR

                 *Anthony T. Case*
           By: _____
             ANTHONY T. CASE, ESQ
             Attorneys for Defendant
             CNO Services, LLC