Peter Borenstein (SBN 304266)
P.O. Box 885
Culver City, CA 90232
(213) 362-8740 (tel)
(877) 460-3681 (fax)
peter@brnstn.org

Attorney for Plaintiff
JOHN NJOROGE

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT

| | |
|---|---|
| JOHN NJOROGE,<br><br>  Plaintiff,<br><br>vs.<br><br>CNO SERVICES, LLC; CAROLINE KIMONDO,<br><br>  Defendants. | Case No. 20STCV03454<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>**1) BAD FAITH BREACH OF IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING**<br>**2) BAD FAITH FAILURE TO PROPERLY INVESTIGATE CLAIM**<br>**3) BREACH OF FIDUCIARY DUTY (PROB. CODE § 4231.5(A).)**<br>**4) ATTORNEY-IN-FACT BAD FAITH (PROB. CODE § 4231.5(C).)**<br>**5) CONVERSION**<br>Dept:    50<br>Judge:   Hon. Teresa A. Beaudet<br><br>Complaint Filed:   January 28, 2020<br>Notice of Removal:   March 2, 2020 |

John Njoroge ("Plaintiff") alleges for his complaint as follows:

## INTRODUCTION

1. On June 21, 2006, Robertson Kimondo ("Mr. Kimondo") bought a Flexible Premium Index Deferred Fixed Annuity policy ("the Policy") from Defendant CNO Services, LLC ("CNO Services"), then known as Conseco Insurance Company, and named his son, Plaintiff, as the annuitant of the policy.

2. Mr. Kimondo established the Annuity with an initial premium payment of $50,000 and subsequent fifty-dollar monthly premium thereafter until his death.

3. At all relevant times and until April 13, 2019, Plaintiff was incarcerated in the California state prison system.

4. On May 17, 2008, Mr. Kimondo passed away.

5. Pursuant to the terms of the Policy, Plaintiff was entitled to its value at the time of Mr. Kimondo's death as the annuitant.

6. When Plaintiff was released from prison in 2019, he submitted a claim to CNO Services to obtain the benefit of the Policy that his father had taken out for him.

7. In a letter dated August 21, 2019, CNO Services refused to process Plaintiff's claim, contending that "the policy is no longer inforce [sic]."

8. On October 8, 2019, Plaintiff sent a formal demand through counsel to CNO Services to honor the Policy and pay out the benefit to Plaintiff pursuant to its terms.

9. On October 15, 2019, CNO Services responded by letter and indicated that they were unable to locate any record of the Policy.

10. After filing this lawsuit, CNO Services informed Plaintiff that his sister and attorney-in-fact, Caroline Kimondo ("Ms. Kimondo"), had claimed the value of the annuity on his behalf in 2010.

11. CNO Services failed to properly investigate Plaintiff's claim in bad faith and also failed to inform Plaintiff of his sister's malfeasance before filing the lawsuit.

12. Therefore, CNO Services breached the implied obligation of good faith and fair dealing it owed to Plaintiff's and without conducting any investigation before this lawsuit was filed.

13. Meanwhile, Ms. Kimondo misappropriated the value of the Policy as Plaintiff's attorney-in-fact.

14. Now, Plaintiff seeks to recover the value of the Policy upon Mr. Kimondo's death plus interest since 2006, punitive damages, and attorney's fees for Defendant's bad faith denial of his claim and for Ms. Kimondo's breach of her fiduciary duty to Plaintiff as his attorney-in-fact.

### THE PARTIES

12. Plaintiff John Njoroge is a resident of the County of Los Angeles, State of California.

13. Defendant CNO Services, LLC is a limited liability company incorporated in the State of Indiana.

14. Defendant Caroline Kimondo is a resident of the County of Oakland, State of California.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over all causes of action asserted herein because causes of action arise out of the conduct of an insurer admitted in California and regulated by the California Department of Insurance.

15. Venue is proper in this Court pursuant to Code of Civil Procedure section 395, subdivision (a) because CNO Services is a foreign corporate entity.

## FACTUAL BACKGROUND

16. On June 21, 2006, Mr. Kimondo bought the Policy (Policy No. A0602370) from a predecessor of CNO Services and named Plaintiff as the annuitant.

17. The Policy was funded with an initial $50,000 premium.

18. Upon information and belief, Mr. Kimondo paid subsequent monthly $50 premiums until his death.

19. On or around June 21, 2006, CNO Services' predecessor sent the relevant paperwork and executed agreement to Plaintiff in prison. This was the only correspondence that Plaintiff ever received from CNO Services' predecessor.

20. On May 17, 2008, Mr. Kimondo passed away.

21. CNO Services or its predecessor was required to send notice of Mr. Kimondo's death and relevant information regarding how to claim the Policy as the annuitant. (*Westrick v. State Farm Ins.* (1982) 137 Cal.App.3d 685, 692.)

22. CNO Services or its predecessor never informed Plaintiff of his rights as an annuitant under the terms of the Policy at any time, including upon Mr. Kimondo's death.

23. On April 13, 2019, Plaintiff was released from prison.

24. On August 15, 2019, after consulting with an attorney, Plaintiff submitted the appropriate Annuity Claim Form to CNO Services.

25. In a letter dated August 21, 2019, Plaintiff was informed by CNO Services that it had "received [his] request for Beneficiary change" but was "unable to process such a request because the policy is no longer inforce [sic]."

26. Plaintiff did not submit a request for Beneficiary change form to CNO Services.

27. Meanwhile, the term "inforce" appears to be a malapropism; the word is obviously not used correctly, if it exists at all, in CNO Services' official correspondence with Plaintiff.

28. Subsequently, on October 8, 2019, Plaintiff made a formal demand through counsel for the disbursement of the value of the Policy as requested in the August 15 claim.

29. CNO Services responded with a letter dated October 15, 2019 requesting a copy of the Policy's terms from Plaintiff.

30. On October 30, 2019, Plaintiff provided a copy of the relevant Policy documents to CNO Services.

31. In a letter dated November 6, 2019, CNO Services indicated that it had received the policy documents but that "after researching both active and inactive files, [it] was unable to locate the policy you referenced."

32. CNO Services' November 6 response conflicts with the August 21 response: The August 21 response clearly indicates that the Policy is no longer "inforce" while the November 6 response suggests that the Policy never existed or has been lost.

33. In either case, CNO Services has refused to accept or even process Plaintiff's claim.

34. CNO Services' conflicting responses to Plaintiff's claim are evidence of its bad faith.

35. As a result of Defendant's bad faith in refusing to accept Plaintiff's claim on the Policy as the annuitant nor investigate the claim, Defendant was forced to file the instant lawsuit to vindicate his rights and recover the value of the annuity due to him.

36. During the pendency of the lawsuit, CNO Services revealed that Ms. Kimondo claimed the value of the Policy on Plaintiff's behalf as his attorney-in-fact in 2010.

37. Now, Plaintiff seeks to recover the value of the Policy pursuant to its terms plus interest since 2008, when Mr. Kimondo passed away, from Defendants jointly and severally.

## FIRST CAUSE OF ACTION

**(Bad Faith Breach of Implied Obligation of Good Faith and Fair Dealing – Against Defendant CNO Services, LLC)**

38. Plaintiff hereby realleges and incorporates by this reference, as though set forth in full, the allegations in paragraphs 1 through 37, inclusive.

39. On June 21, 2006, the Policy was executed between Mr. Kimondo and CNO Services' predecessor, the admitted insurer, with Plaintiff named as the annuitant.

40. On May 17, 2008, Mr. Kimondo passed away.

41. On August 15, 2019, Plaintiff submitted his claim for the Policy as the annuitant.

42. On August 21, 2019, CNO Services refused to process the claim, contending that "the policy is no longer inforce [sic]."

43. The August 21 letter erroneously indicates that Plaintiff had submitted a beneficiary change form.

44. The August 21 letter does not explain what "inforce" means or its bearing on Plaintiff's claim, if any.

45. Upon information and belief, CNO Services denied the claim out of hand and without reviewing the claim simply because it referenced a policy more than ten years old.

46. Plaintiff alleges that CNO Services was unreasonable in this first denial of Plaintiff's claim.

47. Even after being contacted by counsel and receiving the original policy documents and agreement, CNO Services still refused to process the claim, indicating in a letter dated November 6, 2019 that "[a]fter researching both active and inactive files, we were unable to locate the policy you referenced."

48. Nevertheless, after this lawsuit was filed, CNO Services informed Plaintiff's counsel that Ms. Kimondo had claimed the value of the Policy on behalf of Plaintiff as his attorney-in-fact.

49. Now, Plaintiff seeks to recover the value of the Policy at the time of Mr. Kimondo's death in 2006 plus interest since that time from CNO Services for its bad faith denial of Plaintiff's claim.

50. Additionally, Plaintiff seeks attorney's fees and punitive damages for Defendant's bad faith denial of his claim. (*Archdale v. American Internat. Specialty Lines Ins. Co.* (2007) 154 Cal.App.4th 449, 467.)

## SECOND CAUSE OF ACTION

**(Bad Faith Failure to Properly Investigate Claim – Against Defendant CNO Services, LLC)**

51. Plaintiff hereby realleges and incorporates by this reference, as though set forth in full, the allegations in paragraphs 1 through 50, inclusive.

52. "When investigating a claim, an insurance company has a duty to diligently search for evidence which supports its insured's claim." (*Mariscal v. Old Republic Ins. Co.* (1996) 42 Cal.App.4th 1617, 1620.)

53. On August 15, 2019, Plaintiff submitted his claim for the Policy as the annuitant.

54. On August 21, 2019, CNO Services responded to Plaintiff's claim by letter indicating that "the policy is no longer inforce [sic]."

55. Upon a formal demand by counsel, CNO Services responded again in a letter dated November 6, 2019, that "[a]fter researching both active and inactive files, we were unable to locate the policy you referenced."

56. The August 15 response suggests that the Policy does exist and that CNO Services does have a record of it whereas the November 6 response indicates that no record of the Policy exists.

57. The discrepancy between CNO Services' responses is evidence of its bad faith and failure to investigate Plaintiff's claim.

58. Furthermore, CNO Services later revealed after the instant lawsuit was filed that Ms. Kimondo withdrew the value of the annuity on Plaintiff's behalf as his attorney-in-fact in 2010.

59. Because of Defendant's failure to properly investigate Plaintiff's claim or reveal that Ms. Kimondo had withdrawn the value of the annuity without his knowledge, Plaintiff has not been able to claim the value of the Policy that Mr. Kimondo intended to be disbursed to him.

60. Now, Plaintiff seeks to recover the value of the Policy at the time of Mr. Kimondo's death in 2006 plus interest since that time from CNO Services for its failure to investigate his claim.

61. Additionally, Plaintiff seeks attorney's fees and punitive damages for from CNO Services for its failure to investigate his claim. (*Archdale v. American Internat. Specialty Lines Ins. Co.* (2007) 154 Cal.App.4th 449, 467.)

### THIRD CAUSE OF ACTION

**(Breach Of Fiduciary Duty (Prob. Code § 4231.5(a) – Against Defendant Caroline Kimondo)**

62. Plaintiff hereby realleges and incorporates by this reference, as though set forth in full, the allegations in paragraphs 1 through 61, inclusive.

63. At some point during his incarceration, Plaintiff appointed Ms. Kimondo as his attorney-in-fact by executing and notarizing a power of attorney form.

64. An attorney-in-fact is a fiduciary to the principal. (Prob. Code § 4232.)

65. A fiduciary is "duty bound to act with the utmost good faith for the benefit of the [principal]." (*Wolf v. Super. Ct.* (2003) 107 Cal.App.4th 25, 29.)

66. Furthermore, "[t]he attorney-in-fact shall keep the principal's property separate and distinct from other property in a manner adequate to identify the property clearly as belonging to the principal." (Prob. Code § 4233, subd. (a).)

67. A breach of fiduciary duty occurs where an attorney-in-fact misappropriates the principal's property for her own use.

68. CNO Services recently revealed that Ms. Kimondo claimed the value of the Policy on behalf of Plaintiff as his attorney-in-fact in 2010.

69. Plaintiff did not instruct Ms. Kimondo to claim the Policy nor was he aware that she did so.

70. Ms. Kimondo never informed Plaintiff that she withdrew the value of the Policy on his behalf as his attorney-in-fact.

71. To date, Ms. Kimondo has not transmitted the value of the Policy to Plaintiff as his attorney-in-fact.

72. Ms. Kimondo misappropriated the funds that she claimed as Plaintiff's attorney-in-fact for her own use and without Plaintiff's knowledge.

73. Therefore, Ms. Kimondo breached her fiduciary duty to Plaintiff.

74. Now, Plaintiff seeks to recover the value of the Policy from Ms. Kimondo plus interest since 2010.

## FOURTH CAUSE OF ACTION

**(Attorney-in-Fact Bad Faith (Prob. Code § 4231.5(c) – Against Defendant Caroline Kimondo)**

75. Plaintiff hereby realleges and incorporates by this reference, as though set forth in full, the allegations in paragraphs 1 through 74, inclusive.

76. Probate Code section 4231.5, subdivision (c) provides that "[i]f a court finds that a person has in bad faith wrongfully taken, concealed, or disposed of property that belongs to a principal under power of attorney . . . the person shall be liable for twice the value of the property recovered by an action to recover the property or for surcharge. In addition, except as otherwise required by law, . . . the person may, in the court's discretion, be liable for reasonable attorney's fees and costs to the prevailing party."

FIRST AMENDED COMPLAINT – NJOROGE V. CNO SERVICES, LLC, ET AL.

7

77. Actions taken in "bad faith" may be described as "objectively unreasonable conduct, regardless of the actor's motives." (*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 373.)

78. In addition to protecting against actions taken by attorneys-in-fact in "bad faith," Probate Code section 4231.5, subdivision (c) also provides recourse when an attorney-in-fact has "wrongfully taken" the principal's property.

79. Plaintiff alleges that Ms. Kimondo acted in bad faith when she claimed the value of the Policy on his behalf as his attorney-in-fact without his knowledge.

80. Furthermore, Plaintiff alleges that Ms. Kimondo misappropriated the value of the Policy for her own use and in breach of the fiduciary duty she owed to Plaintiff.

81. Now, Plaintiff seeks to recover the value of the Policy from Ms. Kimondo plus interest since 2010. If this Court finds that Defendants acted in bad faith as attorney-in-fact, Plaintiff will also seek double damages and attorney's fees pursuant to Probate Code section 4231.5, subdivision (c).

## FIFTH CAUSE OF ACTION

### (Conversion – Against Defendant Caroline Kimondo)

82. Plaintiff hereby realleges and incorporates by this reference, as though set forth in full, the allegations in paragraphs 1 through 81, inclusive.

83. CNO Services recently revealed that Ms. Kimondo claimed the value of the Policy on behalf of Plaintiff in 2010 as his attorney-in-fact without his knowledge or consent.

84. As such, Plaintiff alleges that Ms. Kimondo converted the value of the Policy when she withdrew its value without informing Plaintiff.

85. Plaintiff did not consent to Ms. Kimondo's conversion of his property as his attorney-in-fact. Indeed, he only learned of the conversion when CNO Services informed him after this lawsuit was filed.

86. Plaintiff has been harmed by not being able to recover the value of the Policy at the time that Ms. Kimondo misappropriated it without his consent.

87. Now, Plaintiff seeks to recover the value of the Policy from Ms. Kimondo at the time she converted it plus interest.

WHEREFORE, Plaintiffs prays for judgment as follows:

## ON ALL CAUSES OF ACTION.

1. For recovery of the value of the Policy at the time of Mr. Kimondo's death, estimated to be $50,000, plus interest since 2008.
2. For punitive damages against CNO Services for its bad faith breach of the implied obligation of good faith and fair dealing and failure to investigate Plaintiff's claim.
3. For reasonable costs and attorney's fees against CNO Services for its bad faith breach of the implied obligation of good faith and fair dealing and failure to investigate Plaintiff's claim.
4. For recovery of the value of the Policy at the time that Ms. Kimondo claimed it as Plaintiff's attorney-in-fact, estimated to be $50,000, plus interest since that time.
5. For recovery of double the value of the Policy at the time that Ms. Kimondo claimed it as Plaintiff's attorney-in-fact should the Court find that Ms. Kimondo acted in bad faith.
6. For reasonable attorney's fees against Ms. Kimondo for her bad faith breach of her fiduciary duty to Plaintiff.
7. For any other compensatory, general, special, and consequential damages against Defendants.
4. For such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demands trial by jury on all issues so triable.

Respectfully submitted,

Dated: 9/3/20

By:_____
Peter Borenstein
Attorney for Plaintiff
JOHN NJOROGE